DAVID MORTON *against* JOSHUA WELLS.

THIS was an action on the case, brought to reco-ver one hundred dollars, forfeited for the non-fulfil-ment of a contract.

The plaintiff declared *in substance* on the following contract:

On agreement this day entered into between *Jo-shua Wells,* of *Salisbury,* in the County of *Addison,* on the one part, and *David Morton,* of *Middlebury,* State of *Massachusetts,* on the other part, to wit: The said *Wells* agrees to sell to the said *Morton* eighty acres of land lying in good farm off of the south side of his the said *Wells's* farm he now lives on, for the sum of nine dollars per acre, and to pro-cure *a good warrantee deed of the same,* when he hath received 333 dols. 34 cts. in six weeks from this date, and the remainder to be paid by the first day of *December,* 1800; 286 dols. 67 cts. in cash, and the remainder in neat cattle. And the contracting parties further agree, that if either of them fails or forfeits the aforesaid agreement, he shall forfeit to the other *one hundred dollars,* to be recovered by law the same as a note of hand for value received.

In witness whereof the contracting parties hereunto set their hands the 6th day of *November,* in the year of our Lord, 1799.

*Joshua Wells.*
*David Morton.*

In presence,
    *Elisha Morton,*
    *John Chipman.*

The general issue joined, and put to the Jury.

The plaintiff offered to read the written contract.

Objected to for this variance. The declaration sets forth, that the defendant agreed to " *sell and convey eighty acres of his farm,*" and the written contract is, " *to procure a good warrantee deed of the same.*"

*When a party declares in substance upon a written contract, he is not obliged to set forth the express words of the contract in his declaration.*

*Sed per Curiam.* The plaintiff has declared in substance, and not *in hæc verba* upon the written contract. The contract exhibited is substantially the same with that declared upon.

The plaintiff now offered to shew by the subscribing witnesses, that the defendant agreed, at the time of the contract, to receive payment in bills of the bank of the *United States.*

*Samuel Miller,* for defendant. We object to the admission of such evidence. When parties reduce their contract to writing, and it is duly signed and attested, the law will confine them to the writing. Neither party shall controvert it by parol testimony. Certainly it would be dangerous to control written contracts by the loose observations of parties.

*If a contract in writing mentions a sum in dollars and cents, theCourt will permit it to be shewn in evidence, that the sum was to be paid in United States bank bills; this going not to controvert but to explain the contract.*

*Sed per Curiam.* The position laid down is correct; but the evidence adduced goes, not to controvert but to explain the intention of the parties. The expression in the contract simply states the amount

of 333 dols. 34 cts. Though bills of the *United States* bank cannot be lawfully tendered in payment, yet in fact they pass current at par with gold and silver in all our common bargains and sales. The evidence that the defendant agreed to receive them, and that at the very time of the signing, is a rational explanation of the contract.

Let the evidence be admitted.

TYLER, Judge, dissenting. It was fully proved, that the defendant agreed to receive payment in bills of the *United States* bank.

It further appeared in evidence, that on the 18th day of *December*, 1799, the plaintiff had procured bills of the *U. S.* bank, to the amount of the first payment; that on the evening of the same day, between eight and nine o'clock, he went to the defendant's house, who was from home; and there producing a bundle of bank bills of the bank of the *U. S.* said he had come to pay *Wells* 333 dols. 34 cts. and to demand a deed according to contract.

It appeared also, that the day before the defendant had observed to one of the attesting witnesses to the contract, that if *Morton* failed to make payment, he should prosecute him for the 100 dollars; and on the morning of the day of the tender, the defendant acknowledged that he had conveyed the farm by deed to *Gamaliel Painter*, Esquire; and concluded, that if *Morton* tendered the money, he must lose the 100 dollars.

The defence to the Jury was, that this tender was not good.

First. That the bills were not counted at the time of the tender.

Secondly. That the tender was made after sun-setting.

*Samuel Miller.* To make a tender good, it is necessary that the money or other thing should be so exhibited to the view of the party, as that he may be able to determine whether there be sufficient to fulfil the contract, otherwise he may part with his property for nought.

It is therefore laid down in the books, that it is not enough for the person who intends to make a tender to say, I am ready to pay the debt, or to perform the duty; but he must make an actual offer to pay the one or perform the other.

The mortgagor said to the mortgagee, " I am here ready to pay you the money due upon the mortgage," but at the same time kept the money, which was in a bag under his arm. This was holden not to be a good tender. *Bac. Abr.* vol. 6. p. 447.

Considering the nature of the payment, it was peculiarly incumbent on the plaintiff to allow our client a fair opportunity of inspecting the property tendered; for it is a melancholy fact, that even in our transactions with the honest part of the community, the most cautious dealer will find more or less counterfeited bills in every payment made to him. We do not wish to impute any improper design in the defendant, but surely when we are dealing with the most honourable, and bank bills are the medium, a degree of circumspection is necessary.

Upon the second point the law is express. Al-
though the party who ought to pay money or deliver
goods, has, until the uttermost convenient time of the
last day limited for the payment or delivery to pay
the money or deliver the goods, a tender is not good,
unless there be, after it is made, time enough before
the sun sets, to examine and tell the money, or to
examine and take an account of the goods: for if a
man should be compelled to receive either money or
goods in the dark, there would be great danger of his
being imposed upon. *Bac. Abr.* vol. 6. p. 453.

<em>Morton<br>v.<br>Wells.</em>

*Lott Hall*, for the plaintiff. The law cited by our
opponents on the first point, is certainly correct, and
strictly applicable in cases where the creditor is pre-
sent: but if he will wilfully absent him from the place
where and at the time when the tender is to be made,
it could be of no benefit to him to have the money
inspected and counted in his absence; and he is
estopped from saying the money was not counted,
which, whether counted or not, he had unequivocally
declared by his absence, he was predetermined not
to receive.

When a man incapacitates himself from perform-
ing a contract on his part, he shall take no advantage
of the informality of a tender made by the other
party.

Therefore the rule of tender before sunsetting may
be good in general cases; yet in the present case, as
the defendant, by conveying the land to Judge *Pain-
ter*, had voluntarily incapacitated himself from exe-
cuting a deed to the plaintiff according to his con-
tract, he shall not now say the tender was made after

Morton
v.
Wells.

the sun went down. I refused to receive because it was too dark to count and inspect the bills. For even had he been present, and the bills counted in the clearest sunshine, and inspected by the cashier of the bank, he could not have received it, for it is obvious he could not have fulfilled his contract.

The Court, in their charge to the Jury, after stating the evidence, observed,

To make a tender good, the party must, at the latest time of the last day of the term of the contract, before the sun sets, proceed to the dwelling-house, or other usual place of abode of him to whom the tender is to be made, if no other place be provided by the contract, and there produce the money or goods, and offer to comply with the contract. But if the adverse party be absent, or refuse when present to receive the money or goods, or is incapable of performing the contract, he need not count his money, or particularly display the goods, if he can shew otherwise that he has tendered to the amount.

That to make a tender good, the party must, at the latest time, on the last day of the term of the contract, before the sun sets, proceed to the dwelling-house, or other usual place of abode, of him to whom the tender is to be made, if no other place be provided by the contract, and there produce the money or goods, and offer to comply with the contract on his part. But if the other party contracting is absent, he has no occasion to count the money, or particularly display the goods. It will be sufficient that he has already shewn to the witnesses, that he has brought with him and consequently tenders to the amount; and if the other party is present, and refuses to receive the money or goods, or to perform the contract on his part, there will then be no occasion to count the money, or particularly display the goods.

But if he to whom a tender upon a contract to be made is at the time absolutely incapable of performing his part of the contract, the whole reason of counting the money, and particularly displaying the goods tendered, fails.

Tyler, Judge, dissenting. Verdict for the plain-
tiff, 119 dollars, and costs.

Morton
v.
Wells.

*Lott Hall* and ―― ――, for plaintiff.
*Daniel Chipman* and *Samuel Miller*, for de-
fendant.