HAROLD W. KENNEDY *v.* JOSEPH LARAMEE.

(61 A2d 547)

May Term, 1948.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 5, 1948.

*A. Pearley Feen* for the defendant.

*Austin & Edmunds* for the plaintiff.

STURTEVANT, J. This is a tort action in which the plaintiff, Harold W. Kennedy, seeks to recover damages from the defendant, Joseph Laramee, for injuries alleged to have resulted to the plaintiff when an automobile which he was operating was in collision with a truck which the defendant had left parked on the highway so that the left wheels of the truck were on the travelled part of the road. The plaintiff had a verdict and judgment below and the case is here on defendant's exceptions to the refusal of the court to grant his motion for a directed verdict in his favor, made at the close of all the evidence. The only question for our consideration, presented by defendant's exceptions is his claim that, taking the evidence in the most favorable light to the plaintiff, it appears that he was guilty of contributory negligence as a matter of law.

Considered in the light most favorable to the plaintiff, the evidence shows the following facts. In the late afternoon of May 1, 1946, the defendant was driving a truck loaded with logs, westerly on the highway leading from Montpelier to Burlington, known as "U. S. Route No. 2." His truck "went dead" at a point between Richmond and Williston about 400 feet westerly from the driveway entrance to the Seth Johnson farm. The defendant left his

truck parked on the northerly side of the road so that not more than three feet of the travelled portion was occupied by the truck, both left wheels being about the same distance from the northerly edge of the cement. The defendant went to get help and did not return until after the accident had happened. The time of the accident was around 9:30 to 9:45 o'clock in the evening. The defendant put out no flares and left no light showing on his truck.

On May 1, 1946, the plaintiff was employed by a dry cleaning company in Burlington and he had then been so employed for several years. At about noon of that day, the plaintiff left Burlington to make one of his regular trips to Waterbury, Waterbury Center and Stowe for the purpose of delivering and picking up goods in connection with his employer's business. He drove the same International light truck which for several years he had been driving over this same route. This truck had a panelled body with doors in the back and each of these doors had a window in it. There was no partition between the driver's seat and the other part of the truck body. The plaintiff left Waterbury for Burlington at about nine P. M. on the evening of the accident. What was referred to at the trial as the Slocum car followed him nearly all of the way from Waterbury to the place of the accident. His car had outside rear vision mirrors one on each side and from these he could tell that this car was following and judge as to its distance behind him. During the period of about 35 to 40 minutes that it took the plaintiff to drive from Waterbury to the Johnson farm which is about 400 feet easterly of the point where the accident happened, he was blinded for short periods six or seven times from the lights of the Slocum car shining through the windows in the rear of his truck on his windshield. While the Slocum car was following plaintiff's truck, the driver of the former car maintained a distance of about 100 feet between it and plaintiff's truck prior to the accident. As the plaintiff approached the driveway to the Johnson farm, he climbed a hill, the driveway being at the top of that hill. From the driveway westerly to the place where the defendant's truck was parked, a distance of about 400 feet, the road is practically straight and has a slight descending grade. This road has a cement surface 18 feet 2 inches wide and a hard surfaced shoulder on either side about 2 feet wide. The weather was clear but there was no moon shining. The lights and brakes on the plaintiff's truck were in good condition and on high beam the lights

would show a substantial object in the road about 200 feet ahead and on low beam would show such an object about 150 feet ahead of his truck. As plaintiff passed the Johnson farm he was driving 35 to 40 miles per hour and at that speed could stop his car in a distance of about 75 feet. As plaintiff passed the Johnson farm driveway, he noticed some cars approaching from the west and when about 200 feet from defendant's parked truck, that is about half way between the farm driveway and the place of the accident, he put his lights on low beam as he was about to pass the first of these approaching cars. Very shortly thereafter he was blinded by the lights of that car and while he could not see ahead, he could see the side of the road on his right and glanced there to ascertain the position of his car in reference to the side of the highway. This blind period was about a second in duration and when it cleared the plaintiff was almost immediately again blinded by the lights of the car following him shining through on his windshield and this blind period also was about a second in duration. The time between the two blind periods was very short and not sufficient for the plaintiff to gain a clear view of the road ahead. When the second blind period cleared, the plaintiff saw defendant's truck on the right side of the road and about 50 feet ahead of him. Other cars were then approaching from the west and it was plaintiff's judgment that, under the circumstances then present, he could do nothing but apply his brakes and do what he could to stop, keeping the course of his car straight ahead. He did this and crashed into defendant's parked truck with great force. At no time during the blind periods did the plaintiff do anything to stop or reduce his speed and from the beginning of the first blind period to the time when the second blind period cleared he went straight ahead for a distance of about 125 feet at a speed of from 35 to 40 miles per hour. The plaintiff knew that the lights from the car behind him had, by reflecting from his windshield, made it impossible for him to see ahead six or seven times after leaving Waterbury and he must be taken to have known that this might occur again at any moment. At the times material here that car was about 100 feet behind plaintiff's truck and there was nothing from the presence of that car in the rear to reasonably cause the plaintiff to believe that at the time he was blinded by the lights of the car approaching from the west, he could not safely reduce his speed even to the point of stopping. When plaintiff's truck crashed

into the defendant's truck, the Slocum car came to a stop 15 or 20 feet behind plaintiff's truck.

It is true that ordinarily the question of contributory negligence is one of fact for the jury, where the law has settled no rule of diligence, but where the material facts are undisputed and are so conclusive that but one reasonable deduction can be drawn therefrom, the question is one of law for the court. *Steele* v. *Fuller,* 104 Vt 303, 308, 158 A 666, and cases cited. While the plaintiff had the right to assume that a person parking a car on the highway at night would see to it that all signals would be displayed as the law required, yet he could not, for that reason, omit any of the duties or care that the law required of him. *Steele* v. *Fuller,* 104 Vt at 308, 158 A at page 667 and cases cited.

The legal standard of care required of users of our highways is unvarying and alike at all times, namely, that of a prudent man under all the existing circumstances. However, experience has led the courts to adopt, and the Legislatures to enact, certain rules of diligence which are intended to standardize the rights and duties of users of the highways. These rules are additional factors to be considered in a given situation in determining whether the person under consideration is guilty of negligence. *Steele* v. *Fuller,* 104 Vt at 308, 309, 158 A at pages 667, 668, and cases cited. Included among these rules are the following.

1. It is a duty at all times imposed upon the operator of a motor vehicle on a public highway to maintain a lookout for persons and property on the highway, and to use reasonable care to avoid inflicting injury on such persons or property.

2. One using a highway is chargeable with knowledge of the presence thereon of all objects that are in plain view.

3. One driving an automobile along a highway in the dark must drive at such a speed that the driver can stop it within the distance that he can see ahead of it, i. e., within the range of its headlights.

4. The law is well settled that when the operator of a motor vehicle, driving in the night is temporarily blinded by the lights of an approaching car, it is his duty either to stop until his vision is restored, or reduce his speed and have his car under such control that he can stop it immediately; and his failure to do so justifies a charge of negligence. *Steele* v. *Fuller,* 104 Vt at 309, 311, 158 A at pages 668, 669, and cases cited.

■ From what is stated in *Steele* v. *Fuller,* 104 Vt at pages 311 and 312, 158 A at page 669, it appears that when a person, driving a motor vehicle on a highway at night, is blinded by the lights from a car following him at a reasonable distance behind, reflecting from his windshield, it is his duty to stop or slow down until his vision clears. He has no right to drive along in a blinded condition and take a chance on what may be in the road ahead.

From the foregoing, it follows that when the plaintiff was first blinded by the lights of the car approaching him from the west, it was then his duty to immediately begin to reduce his speed and to continue to do so until he had come to a stop or his vision cleared, instead of continuing to drive blinded at a speed of 35 to 40 miles per hour. The plaintiff calls attention to the statement in *Steele* v. *Fuller,* 104 Vt at 312, 158 A at page 669, to the effect that it is possible to conceive of circumstances, such as the too close proximity of a car in the immediate rear of the confused driver which might excuse him from making an abrupt and immediate stop. That statement has no application to the case at bar. At the time in question, the car following the plaintiff was about 100 feet behind his truck and not in such close proximity to the rear of his truck as to give him any reasonable ground for believing that he could not safely reduce his speed or come to a complete stop to avoid taking a chance on what might be in the road ahead and beyond the point seen by him before he was blinded.

■ The plaintiff also claims that when his vision was restored and he saw the defendant's truck in the road about 50 feet in front of him, he was then confronted with an emergency and so his conduct should not be measured by the same high standard as though he had had more time to consider his situation and select his course of action. But, the emergency in which the plaintiff found himself, as described by him, was one which his own negligence had contributed in producing. Under such circumstances, the rule contended for by the plaintiff has no application. *Steele* v. *Fuller,* 104 Vt at 310, 158 A at page 668, and cases cited. Also see *Mangan* v. *Smith,* 115 Vt 250, 56 A2d 476, 478, and cases cited.

Since the plaintiff, as a matter of law, was guilty of contributory negligence, the defendant's motion for a directed verdict in his favor should have been granted.

*Judgment for the plaintiff is reversed. Judgment entered for the defendant to recover his costs.*