FRANCIS J. TROMBETTA *v.* CHAMPLAIN VALLEY FRUIT CO., INC.

(94 A2d 797)

January Term, 1953.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and CUSHING, JJ.

Opinion Filed February 3, 1953.

*Clayton H. Kinney* for the defendant.

*Lawrence & O'Brien* for the plaintiff.

SHERBURNE, C. J. This is an action in tort to recover damages for personal injuries and loss of earnings resulting to the plaintiff from an automobile accident on June 23, 1951. It comes here upon defendant's exceptions after a verdict and judgment for the plaintiff.

The undisputed evidence shows that the plaintiff was operating a heavily loaded gasoline truck southerly on the main paved highway a few miles south of Rutland, and had been proceeding along a long straight stretch up a slight grade at a speed of approximately 15 miles per hour at a point where the truck when loaded could not go faster than 15 to 20 miles per hour, when he slowed down to approximately 10 miles per hour and waved to traffic behind him to pass, and two cars did pass. He then slowed down further to 5 to 10 miles per hour, and as he did so he saw in his rear view mirror defendant's car 75 to 100 yards behind him and waved it on but gave no other signal. Instead of passing as the other cars had this car ran into the rear of the truck with sufficient force to push the tank on the truck ahead into the cab, and the plaintiff was thrown forward against the front of the truck, his foot broke off the accelerator pedal, and he sustained a chipped fracture on the outer side of his right foot, a sprained ankle and a 25% permanent disability in the function of his ankle because thereof.

The defendant excepted to the failure of the court to instruct the jury as requested, that if the jury found that the plaintiff violated the safety regulation relative to giving a hand signal before materially slackening his speed, the burden was on him to meet and overcome this prima facie evidence of negligence on his part by other evidence, and that the undisputed evidence shows that the plaintiff did violate this safety regulation and that it was for the jury to say whether or not he has produced any evidence fairly and reasonably tending to excuse his violation of this safety regulation. The court called this regulation to the attention of the jury and explained that a violation would make out a prima facie case of negligence against the plaintiff, and would give rise to a rebuttable, rather than a conclusive presumption of negligence on his part. The only reason advanced by the defendant in support of its exception is, that proof of the violation of such a safety regulation by the plaintiff cast the burden upon him to meet or overcome it by other evidence. The language of the request referred to was that the burden was upon the plaintiff to meet "and" overcome, not

merely to meet "or" overcome, it by other evidence. Error is not made to appear.

The plaintiff was employed by the Rutland Gas & Oil Company at $50.00 per week at the time of the accident. Besides gasoline he carried oil in 5 gallon lots, 100 pound grease trucks and and sometimes 453 pound motor oil trucks. After the accident he was disabled for about two weeks, then the first week after he went back to work he hung about the office and didn't do much because of his injuries, then he drove the truck for about a week, but his ankle bothered him so much that he couldn't stand long or carry the heavy cans of oil and grease or walk for any distance, and he gave up the job. On July 23, 1951, he sub-leased from the American Oil Company an idle filling station owned by his father, and from that date to the time of the trial in March, 1952, had an average income therefrom of approximately $10.00 per week. He didn't try to get into any other business. He testified that he could go out and earn more than $10.00 per week, that he was probably capable of getting people to pay him as much as he was getting at the time of the accident, but that he was not able to do so because of his obligation to his father to repay him for money loaned to him, and the only way he could do so was to run the filling station and build up the business to an expected weekly average profit of $55.00.

The defendant seasonably requested the court to instruct the jury, that the evidence shows that the plaintiff's earnings at the service station he has been operating since the injury are based upon other considerations than reasonable value of his services, and that his earnings in one employment are not a suitable basis for determining his earning capacity at the time of or after his injury. The court failed to charge these requests, but did charge the jury to take into consideration all the circumstances with regard to the plaintiff's taking over the filling station and operating it on the basis he did and the tremendous loss of earnings since he went back to work, and stated: "It is all a question for you to determine what is a fair amount for this plaintiff to recover if you come to the question of damages for his loss of earnings since he was injured." To the denial of these requests and to the charge as made the defendant excepted and pointed out the evidence given by the plaintiff that he was under some obligation to his father to run the filling station and that therefore what he was earning at the filling station should not be considered as compared to his prior earnings as a basis for mak-

ing an award of damages, that on the basis that the court charged, the jury would be warranted in taking the plaintiff's earnings prior to the accident and comparing them with his earnings since, that his earnings in one employment are not a suitable basis for determining his earnings in another employment, and that this is particularly true because he is running the filling station because of some obligation to his father.

■■ Loss of earning capacity is a proper element of damages to the plaintiff. *Lincoln* v. *Central Vermont R. Co.,* 82 Vt 187, 198, 72 A 821; *Baldwin* v. *Gaines,* 92 Vt 61, 73, 102 A 338; *Brown* v. *Sutkowski,* 117 Vt 377, 91 A2d 556. This element of damages, like any other, must be proved, and enough facts must be shown to enable the jury to make an intelligent determination of the extent of his loss. Ordinarily, with an adult, this is to be shown by proof of what the party earned before the injury, and what he has been earning since. *Baldwin* v. *Gaines, supra.* But his earnings in one employment are not a suitable basis for determining his earning capacity in another employment at the time of or after the injury. 15 Am Jur, Damages, § 93.

■ Whether or not the requests were adequate or the exceptions to their denial were properly taken, we think that the exception to the charge fairly directs the attention of the court to the claimed error. This is the test. *Hall* v. *Royce,* 109 Vt 99, 107, 108, 192 A 193; *In re Chisholm's Will,* 93 Vt 453, 456, 108 A 393; *Fitzgerald* v. *Metropolitan Life Ins. Co.,* 90 Vt 29, 308, 98 A 498. While plaintiff's wages of $50.00 per week before the accident can be accepted as showing his then earning capacity, his average net earnings of $10.00 per week over a period of 8 months in starting a filling station business cannot be accepted as showing his earning capacity after the accident, when he inferentially admits that he was probably capable of getting a job at $50.00 per week, but took over the filling station because of the hope that he could eventually earn enough more to be better able to repay a loan from his father. Under the charge of the court the jury was authorized to allow the difference between $50.00 and $10.00, or $40.00 per week for loss of earnings over a period of 8 months. The verdict of $4500.00 indicates that the jury probably computed loss of earnings on this basis. The exception to the charge is sustained. It was reversible error to instruct the jury as the court did.

The defendant excepted to the submission to the jury of dam-

ages for future pain and suffering on the ground that there was no evidence sufficient for any award therefor. All that need be said is that the evidence tended to show that the plaintiff cannot stand long without his ankle becoming sore. If he works and stands around all day his ankle swells and hurts. It hurts in the morning when he gets up. It pains him before a rain storm. He felt pain at the trial. This exception is not sustained.

From a reading of the transcript we are convinced that the jury settled the issue of liability fairly and upon sufficient evidence, so that disassociated from other questions it ought to stand as the final adjudication of the rights of the parties.

*Judgment as to liability affirmed. Judgment as to damages reversed, and cause remanded for retrial on that issue only.*