### State of Vermont v. Roy M. Coburn

[165 A.2d 349]
September Term, 1960

Present: **Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.**

Opinion Filed November 1, 1960

James A. C. Stillman, State's Attorney, for the State.

Black & Plante for the respondent.

**Holden, J.**  The respondent, Roy M. Coburn, was found guilty of operating a motor vehicle while under the influence of alcoholic liquor, in violation of 23 V.S.A. §1183. The alleged offense occurred in Windsor, Vermont, on the afternoon of August 31, 1957. The respondent appeals and assigns error to the trial court's instructions to the jury.

A stewardess at the Windsor Country Club served the respondent a drink of whiskey shortly after two o'clock. After consuming the drink the respondent drove away in his car. Although the stewardess served the respondent but one drink, she thought he was under the influence of liquor.

Mitchell Kristock encountered the accused as the latter drove out of the club driveway and entered U. S. Route 5. He had to apply his brakes to avoid collision as the respondent entered the main highway ahead of him. Kristock followed the respondent toward the village of Windsor and observed Coburn's car proceed far to the left and then back into position as it continued on to Davis Brothers Garage. There the respondent drove into the yard and stopped. Kristock observed the respondent getting out of his vehicle and gave the opinion that the respondent was under the influence of intoxicating liquor.

Two witnesses employed at the garage observed the respondent over a period of a few minutes. Each testified that from this observation he believed the respondent was under the influence of alcohol.

The respondent was arrested at the garage and was taken to the police station in the company of three officers. The officers gave evidence that there was a strong odor of alcohol from the respondent's breath. His clothing was disarranged and his trousers were soiled and wet. He was unsteady, had difficulty walking and his speech was slurred, although he was polite and cooperative. Each of the officers was of the opinion that the respondent was under the influence of alcohol.

At the police office the respondent was examined by Dr. William Waterman, a general practitioner of medicine, called by the police for this purpose. He found the respondent's clothing in disarray. His color and reaction to light were normal but the respondent's eyes were bloodshot and his speech slurred. His breath gave off an odor of alcohol to a moderate degree. He was not oriented as to time. His balance was unsteady when in motion. He reacted normally when picking up a coin and when called upon to touch his nose with his right hand, but faltered with the left. Based on this observation, Dr. Waterman testified that he was of the opinion that the respondent was under the influence of alcohol and this influence was such as to affect his ability to operate a motor vehicle.

The respondent did not testify in his own behalf. He produced two character witnesses who testified concerning his reputation for sobriety in his community. He also called Dr. Stanley Garipay, a medical practitioner who had treated the respondent in August, 1957, for a disease which he diagnosed as fibrous pleurisy. Dr. Garipay

testified that fibrous pleurisy, as experienced by the respondent, affected the spreading of the muscles of the back wall, restricted his motion and ability to walk and turn. He further testified that the respondent had difficulty in performing the finger-to-nose test with his right hand under conditions of complete sobriety. The State offered no evidence to rebut the testimony of Dr. Garipay.

In instructing the jury, the trial court made no reference to the medical witnesses nor their testimony and made no mention of expert witnesses. The respondent excepted "to the failure of the Court to instruct the jury in the matter of expert testimony."

■ By way of this exception the respondent cites a failure in the trial court to instruct the jury adequately on every issue material to decision of the case. The obligation referred to is well established for it is one of the first duties of the trial court in submitting a cause to the jury to define the essential issues of fact and instruct on the law applicable to such issues. This duty to so charge prevails even without a preliminary request, for the absence of a request can be supplied by a proper exception which points out the shortage. If the cause is then given to the jury without the correction indicated, reversible error will result. *State* v. *Brisson,* 119 Vt. 48, 52, 117 A.2d 255; *Trombetta* v. *Champlain Valley Fruit Co.,* 117 Vt. 491, 494, 94 A.2d 797; *In re Chisholm's Will,* 93 Vt. 453, 456, 108 A. 393.

Perhaps it can be inferred from the record that in the presentation of the defense the respondent sought to explain his faulty locomotion and coordination on the day of the alleged offense by attributing this aspect of his condition to fibrous pleurisy. If so, the respondent's medical witness failed to state that the symptoms of fibrous pleurisy are consistent with those of intoxication. Dr. Garipay merely stated that fibrous pleurisy was a condition that could have some effect on the respondent's ability to walk and turn, that it would restrict his motion to some extent, depending on the degree of advancement.

However this may be, the essential weakness in the respondent's exception lies in its failure to reach the error which he now claims. There is nothing in the language of the respondent's exception to indicate that he was referring to Dr. Garipay's testimony or that he claimed a shortage in the court's charge on the material issues or the theory of the defense. Herein lies the principal difference between

this appeal and the Brisson case, *supra,* 119 Vt. 48 at 52, 117 A.2d 255.

██ In order to prevail on appeal, an exception to the court's instructions must fairly point out the error assigned to give the trial court an opportunity to correct the deficiency. *Croteau* v. *Allbee,* 117 Vt. 332, 335, 91 A.2d 803; *State* v. *Noyes,* 111 Vt. 178, 181, 13 A.2d 187. Although the court may have committed error below, it will not result in a reversal unless the mistake was raised and brought to light at the trial. *Croteau* v. *Allbee, supra,* at 335; *Abel's, Inc.* v. *Newton,* 116 Vt. 272, 275, 74 A.2d 481; *State* v. *Lindsay,* 110 Vt. 120, 123, 2 A.2d 201.

The scope of the exception reaches only the failure of the instructions to refer to the weight, force and effect of expert testimony. The question, then, is whether this omission constitutes prejudicial error.

██ When a conflict develops in the testimony of professional or scientific witnesses in the field of their special knowledge, it has long been the approved and established practice for the trial courts of this state to instruct the jury concerning the weight and effect of such testimony, to afford the jurors guidance in resolving the conflict that has developed. The jury should be assured that the testimony of a qualified expert in whom they have confidence is entitled to careful consideration and that a scientific issue may turn on such testimony. At the same time, the triers should be cautioned against giving undue prominence to the word of one who merely qualifies as an expert and that they are not bound to accept the statements or conclusions of such witness, but should measure his testimony in connection with all other evidence in the case, bearing on the subject. *Sheldon* v. *Wright,* 80 Vt. 298, 316, 67 A. 807.

In this instance the medical evidence given by Dr. Garipay on behalf of the respondent was concerned only with the fact that the respondent was afflicted with fibrous pleurisy and the symptoms and effect of this disease. His testimony on these points was not contradicted nor questioned by the State. Insofar as it appears from the record, his evidence was received at face value. We cannot infer prejudice to the respondent from the failure of the trial judge to caution the jury that they were not bound to accept his testimony.

Similarly, the testimony given by the State's medical witness was not disputed by Dr. Garipay except in the respect that Dr. Waterman omitted to take the respondent's blood pressure and pulse because he deemed these factors of no consequence in determining intoxication. The respondent's medical witness regarded them as significant.

The crucial and incriminating aspect of the testimony given by the State's medical witness centered on his observation of the respondent following the arrest and his opinion that the subject was then under the influence of alcohol in such a way as to affect his ability to operate a motor vehicle. Several lay witnesses testified to the same effect and this evidence was undisputed. His testimony in this respect did not call for professional or scientific knowledge. No pathology nor special medical diagnosis was involved, except for the point in the respondent's favor that he reacted normally to light.

■ Recognition of the fact of intoxication requires no particular scientific knowledge or training. *Ackerman* v. *Kogut,* 117 Vt. 40, 44, 84 A.2d 131. It may be evidenced by predisposing circumstances, namely, the drinking of intoxicants, and by the prior and subsequent condition of the subject. See *State* v. *Graves,* 119 Vt. 205, 211, 122 A.2d 840; *Bagley* v. *Mason,* 69 Vt. 175, 178, 37 A. 287; 2 Wigmore, Evidence, 3rd Ed. §235, p. 31. Although Dr. Waterman's qualifications as a general practitioner were conceded by the respondent, his testimony was not concerned with scientific analysis or observation. It was equally open to proof by competent lay witnesses. The general instructions given by the trial court concerning the credibility of witnesses and the weight to be given their testimony was adequate to enable the jury to properly evaluate the testimony of Dr. Waterman on the issue of intoxication.

The court charged the jury: "Now you are the judges of the credibility of the various witnesses, that is, their worthiness of belief and the weight to be given their testimony. You and you alone are to say what credit you will give their testimony and what facts you will find therefrom. In determining what credit you will thus give, it is proper for you to consider the apparent intelligence or lack of intelligence of the witness, his apparent candor or lack of candor, the manner in which he has testified upon the stand, his feelings of bias, if any, the reasonableness of a witness' testimony and whether it is

supported or contradicted by the facts and circumstances in the case as shown by the evidence. It is all a matter for you to consider. It is all a matter that commends itself to your sound, practical judgment as fair-minded men and women, conversant, more or less, with human affairs and the workings of the human mind and conduct."

■ To this aspect of the charge the respondent excepted to the failure of the court to instruct the jury that witnesses are to be weighed and not counted. It is hardly open to question that the truth is not established by the relative strength in the number of witnesses on one side against the other. The jury is at liberty to accept the word of the minority and reject the cumulative effect of testimony given by the greater number. Frequently, the controlling factor is the quality of the evidence given rather than its quantity. *Webber* v. *Canadian Pacific Railway Co.,* 103 Vt. 460, 467, 156 A. 524. Nothing inconsistent with this principle appears in the language of the charge.

■ However, the disparity in the number of witnesses testifying to a particular fact is sometimes significant and frequently is not to be overlooked nor disregarded. If the jury should regard the witnesses to be worthy of belief, the numerical strength might control. *Abraham* v. *Wilson & Co.,* 121 N. J. L. 530, 3 A.2d 576, 577; *Davies* v. *Philadelphia Rapid Transit Co.,* 228 Pa. 176, 77 A. 450, 453; *Sullivan* v. *Nesbit,* 97 Conn. 474, 117 A. 502, 503; *Eilers* v. *Chicago Transit Authority,* 2 Ill. App. 2d 233, 119 N.E.2d 449, 451; 32 C.J.S. Evidence, §1022c, p. 1055; 23 Am. Jur. Evidence, §1190, p. 1044.

In the trial of this cause, no witnesses were produced by the respondent to refute the fact that he had imbibed. No testimony was given to contradict his condition and appearance immediately before and after his arrest. No opinion was elicited to countervail the concurrence of all the witnesses called by the State that the respondent was under the influence of liquor. The respondent rested his defense entirely on the explanation of his doctor that his faulty coordination could have been caused by fibrous pleurisy. If the jury determined the witnesses summoned were entitled to credit, it would have been inappropriate for the court to instruct the jury to ignore the number of witnesses who testified concerning the respondent's condition.

Finally, the respondent excepted to the failure of the court to instruct the jury that the respondent has "no duty whatever to produce any witness on any evidence as the burden of proof in a criminal case is entirely on the State." His contention on appeal is that the omission of the court to charge, as indicated in his exception, invaded the fundamental principle that the burden of proof is on the State to prove its case against him beyond a reasonable doubt, and the respondent, if he chooses, has no duty to put in any defense, but can, without any adverse effect, present no evidence and rest upon his presumption of innocence. The respondent made no such election at this trial for he produced witnesses and offered evidence to meet the incriminating proof which confronted him.

It is, of course, well established that a defendant in a criminal proceeding may stand on his plea of not guilty and is under no legal obligation to present any evidence in his defense. He has the right to rest entirely on the presumption that he is innocent until proved guilty. Whether he may do so without adverse effect is a different matter.

Until the accusation of the State is supported by evidence capable of persuading fair-minded triers of the fact that there is no reasonable doubt of the respondent's guilt, the accused is secure and he may remain silent without adverse effect. However, when he is confronted with incriminating evidence sufficient to sustain a conviction, he refrains from defending at his peril. The "risk of nonpersuasion" becomes his. 9 Wigmore, Evidence, 3rd Ed. §§2385, 2497. At this point in the trial, if the respondent refuses to meet the challenge of the State's evidence, his default is often detrimental to his acquittal. To be sure, the law imposes no legal obligation upon him to take the offensive, and if he refuses, no admission of guilt is involved. But to say that he may decline to defend without adverse effect obscures his risk and ignores reality. This is entirely consistent with what is said in *Commonwealth* v. *Clinton,* 391 Pa. 212, 137 A.2d 463, 465, cited by the respondent.

In *State* v. *Lacy,* R. I., 138 A.2d 827, also relied upon by the respondent, error was claimed in the argument of the prosecutor to the jury concerning the absence of testimony to refute the State's witnesses. The Supreme Court of Rhode Island could not find the prejudicial effect claimed by the respondent, but went on to say that

even if the argument was improper, the instructions of the trial judge would have corrected any alleged error. The charge in that instance mentioned that the defendant had no burden to prove anything.

And here it might have been well for the trial court to have pointed out to the jury that the respondent was under no legal obligation to summon witnesses or offer proof in his own behalf. We are not convinced, however, that the jury was in any way misled by the failure to do so. The jury was thoroughly instructed that the burden was on the State to prove each and every material element of its accusation against the respondent beyond a reasonable doubt, and that the guilt of the respondent must be so conclusively proved that there remained no reasonable theory upon which he could be declared innocent. The trial judge explained that the respondent was presumed innocent until proven guilty beyond a reasonable doubt and that this presumption attended him throughout the entire trial.

■ Instructions to the jury are to be measured by their full context. Although a charge may contain some expressions or indicate some omissions that are subject to correction on afterthought, "yet if as a whole it breathes the true spirit and doctrine of the law and there is no fair ground to say that the jury has been misled by it, it ought to stand." *Fassett* v. *Town of Roxbury,* 55 Vt. 552, 556; *In re Moxley's Will,* 103 Vt. 100, 114, 152 A. 713; *Laferriere* v. *Saliba,* 119 Vt. 25, 28, 117 A.2d 380.

The instructions upon which this case was submitted meet this standard. No error appears.

*Judgment affirmed. Let execution be done.*

Mr. Chief Justice Hulburd concurs in the result.