### State of Vermont *v.* Gary Paul Fox

[181 A.2d 74]

March Term, 1962

Present: **Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.**

Opinion Filed May 1, 1962

*Arthur E. Crowley, Jr.,* State's Attorney, for the State.

*Thomas F. Mangan (Edward G. McClallen* on the brief) for the respondent.

**Smith, J.** The respondent, Gary Paul Fox, was found guilty by jury verdict at a session of Rutland Municipal Court of (1) without the consent of the owner, taking and operating an automobile for his own use and pleasure, and (2) operating said motor vehicle along the public highway while his license and right to operate a motor vehicle was suspended by the Commissioner of Motor Vehicles. The respondent moved at the close of the State's evidence that a verdict of acquittal be directed by the trial court, and renewed his motion at the close of all the evidence in the case. It is upon the denial of these motions and his exceptions thereto, that respondent has briefed his appeal before this Court.

By reason of his exception to the action of the trial court in denying his motion for a directed verdict of acquittal, the respondent has challenged the substance of the proof against him and we are required to test the evidence in its aspect most favorable to the State, free from the force of modifying evidence. *State* v. *Tatko,* 119 Vt. 459, 460, 128 A.2d 663; *State* v. *Hart,* 119 Vt. 54, 55, 117 A.2d 387; *State* v. *Perras,* 117 Vt. 163, 164-165, 86 A.2d 544.

No evidence was offered by the respondent on his behalf in the trial below. The evidence offered by the State disclosed the following factual situation.

One John Bogart, who lived in the same premises on which he operates an automobile service station on Woodstock Avenue, in the town of Rutland, was awakened by a loud knock on his door in the

early morning of April 29, 1961. Going to the door he found his caller to be the respondent, whom he had known for a long period of time. The respondent asked Bogart for some gas. Bogart refused this request and then observed the respondent walk toward a car parked by the gas pumps after this refusal. Upon returning to his living quarters Bogart was informed by his wife that she heard footsteps around the premises. He then called the state police barracks. After this phone call, Bogart went outdoors and inspected the premises but found no one there.

Trooper Rosen of the state police arrived at the Bogart premises within a few minutes after Bogart's inspection. He found a 1952 dark blue Pontiac parked in front of the gas pumps, with the lights out and the keys in the ignition. After a check of the Bogart premises he proceeded to cruise nearby roads in search of a suspect when he was directed by radio to return to the Bogart premises. This radio message was in response to a second phone call from Mr. Bogart to the state police barracks that he had sighted the respondent crossing from the opposite side of the road toward the service station.

As Trooper Rosen approached the station he sighted the respondent crossing the highway from the station toward the opposite side of the road. Upon a call from the state police officer the respondent stopped and then got into the police cruiser at the officer's invitation. When questioned on what he was doing the respondent replied "out walking."

Upon again observing the Pontiac automobile the State Police officer observed that the lights had been turned on during his absence from the scene, and that the keys were missing from the ignition. Upon questioning the respondent as to any activities he might have had with the car, its lights and the keys, the officer received the answers, "what car," "what lights," "what keys."

At about this time, Officer Cameron of the Rutland City Police Department, accompanied by George Fox, an uncle of the respondent, drove into the Bogart service station. Mr. Fox identified the Pontiac car as his property which he had left in his yard on Gibson Ave., in the city of Rutland, before he retired on the evening of April 28th. He had given no one permission to use his car, and had no idea how it had arrived on Woodstock Avenue. Mr. Fox asked the respondent "Why did you do it," to which the respondent made no reply.

The respondent was then questioned as to the whereabouts of the keys of the Fox car, which were still missing. The respondent borrowed a flashlight from Trooper Rosen, went across the road to where the officer had originally apprehended him, picked up the keys and gave them to the officer. Upon Mr. Fox being given the keys, he started his vehicle with them.

The respondent in his brief argues that all of the evidence which resulted in a conviction of the respondent was circumstantial, that it failed to exclude every reasonable hypothesis consistent with the innocence of the respondent, and therefore it could not sustain the verdict of guilty. As the respondent correctly states in his brief, the burden of proof was upon the State to show that the offense was committed, and that it was the accused who perpetrated the offense.

■ The evidence leaves no doubt that the Pontiac car was taken without the consent of the owner and that it was operated by someone for his or her own use over the streets and roads connecting Gibson Avenue in the city of Rutland to the Bogart service station in the town of Rutland. The question remaining, and the only question, is whether the circumstantial evidence presented by the State as to the respondent being the person who operated the car in question for his own use and pleasure was sufficient to exclude every reasonable hypothesis consistent with the respondent's innocence and to sustain a verdict of guilty. *State* v. *Marston,* 82 Vt. 250, 72 Atl. 1075; *State* v. *Sanford,* 118 Vt. 242, 244, 108 A.2d 516.

The evidence discloses a respondent who seeks gasoline in the early hours of the morning from a service station with a car taken without the consent of the owner, being the only one parked at the service station's gas pumps, and a car that he is seen to approach after his request for gas is refused.

He is apprehended shortly thereafter while going from the same car toward the opposite side of the road. Since the car was first inspected by the police officer, and during the officer's absence, the lights of the car have been turned on and the keys removed. Upon being questioned as to his actions, the respondent replies with frivolous and evasive answers. The respondent is the one who retrieves the missing keys from a spot which could be known only to the person who dropped or placed them there. Such evidence is not consistent with any reasonable theory of innocence, but is sufficient to sustain a finding of guilty in the minds of just and reasonable triers of fact.

■ Added to this is the fact that the respondent remained silent and offered no evidence in his own defense. "Until the accusation of the State is supported by evidence capable of persuading fair-minded triers of the fact that there is no reasonable doubt of the respondent's guilt, the accused is secure and he may remain silent without adverse effect. However, when he is confronted with incriminating evidence sufficient to sustain a conviction, he refrains from defending at his peril." *State* v. *Coburn,* 122 Vt. 102, 109, 165 A.2d 349. Such peril is still a reality although the statute, 13 V.S.A. §6601, forbids comment from both prosecutor and court upon the failure of the respondent to testify in his own defense, and although the jury may be instructed not to consider such failure to testify in his own behalf as evidence against a respondent.

The respondent also contends that the trial court had to base an inference upon an inference to find that the State had proved the offense as charged. This contention is that the trial court had to infer (1) that the respondent had taken the car and (2) would have to base a further inference that the respondent operated the car for his own use and pleasure upon the inference of the taking.

■ A given state of facts may give rise to two or more inferences, and in such case one inference is not built upon another, but each is drawn separately from the same evidence. *Capello's Admr.* v. *Aero Mayflower Transit Co.,* 116 Vt. 64, 67, 68 A.2d 913; *Gero* v. *John Hancock Mutual Life Ins. Co.,* 111 Vt. 462, 479, 18 A.2d 154.

The trial court could reasonably infer from the evidence in this case that the respondent was the person who took the car without the owner's consent. The same evidence also leads to a separate inference that the respondent operated the car for his own use and pleasure from the place where the owner had left it to the Bogart service station.

■ The evidence by virtue of which the trial court made its ruling fairly and reasonably established that an offense had been committed and that the respondent was the offender. The action of the trial court in permitting the jury to resolve, by their verdict, the truth of the charges presented, was not in error. *State* v. *Tatko, supra,* and cases cited thereunder.

The fact that the respondent's license to drive an automobile was under suspension at the time of this offense, is undisputed.

*Judgment affirmed on both counts and the cause is remanded.*