## State of Vermont v. Anthony M. Crosby

[ 204 A.2d 123 ]

June Term, 1964

Present: **Holden, C. J., Shangraw, Barney, Smith and Sylvester, JJ.**

Opinion Filed October 6, 1964

*John C. Fitzpatrick,* Burlington City Grand Juror, for the State.

*Joseph S. Wool* for respondent.

**Sylvester, J.** The respondent Anthony Crosby was tried and convicted by a jury in Chittenden Municipal Court on an information charging him with the careless and negligent operation of a motor vehicle on North Avenue in the City of Burlington, on July 18, 1963, in violation of 23 V.S.A., Section 1181.

In his appeal to this Court, he claims the court erred "in failing to charge the jury on the law of inferences which they might draw." He reserved other exceptions to the charge. His brief, however, is confined to this one claimed error.

The respondent did not testify, and offered no evidence in his own behalf.

The information specifically charged the respondent with failure to keep a proper lookout, and failing to maintain proper control of his motor vehicle.

The uncontroverted and unchallenged evidence introduced by the State tended to prove the following facts: On July 18, 1963, at about 12:30 A.M., the respondent was operating a 1961 Chevrolet Convertible automobile in a northerly direction on North Avenue in the

City of Burlington, at a high and excessive rate of speed; that, as he approached a building located on the east side of the Avenue, known as Ethan Allen Pavilion, his vehicle was observed veering off the east side of the road. After leaving the highway it collided with and knocked down three high tension wire poles, struck, displaced and damaged a number of cement pillars supporting the pavilion building, and damaged the side of the pavilion for a distance of 40-50 feet. A police call box affixed to one of the poles was found under the pavilion a distance of 75-80 feet from the point of contact, parts of the vehicle were "strewn all over the place," a door was severed from the vehicle and found several feet away. The bumper and other parts, were found a number of feet distant, under the pavilion. The vehicle came to rest on its side against the pavilion—a "total wreck."

All the State's evidence, direct, circumstantial and photographic, tended to prove that respondent's automobile collided with the poles, cement pillars and the side of the pavilion with violent force and great momentum, plainly indicating the excessive speed the respondent was travelling at the time of the accident.

With the exception of one witness, the State's evidence having to do with the speed of respondent's vehicle prior to the occurrence, at the time of the accident, and all that occurred prior to the time the automobile came to rest against the side of the pavilion, was circumstantial.

The evidence came from witnesses who reside in the neighborhood. They testified they heard a car travelling along North Avenue at a high and excessive rate of speed and momentarily heard a crash, or an explosion, as one witness residing nearby described the sound heard.

The State's direct evidence came from one Duane Harrington, a student at Burlington High School, who testified that he was hitch-hiking along North Avenue, in a northerly direction, to his camp; that he had reached a point north of the Ethan Allen Pavilion, where he had a complete view of traffic moving northerly; that his attention was attracted by a sound he recognized as an automobile "speed shifting and accelerating"; that he then saw a car approaching at a fast rate of speed; that he observed it as it proceeded all the way along the Avenue, saw it go over a small knoll in the road, veer off the highway to the east, collide with a cable pole and continue on toward the pavilion; that he went immediately to the car, where it had come to rest on its

side against the pavilion, and there recognized the respondent as he was being removed from what remained of the vehicle.

At the conclusion of the court's instructions to the jury, it called upon counsel for suggestions, or "for anything further they desired charged." A colloquy followed at the bench between the court and respondent's counsel, which we quote:

"*Wool:* Yes, the respondent excepts ——

*Judge:* I want to know if you want anything additional?

*Wool:* Yes—wait a minute. I am going to ask the Court, and point out to the Court that the Court has failed to charge the Jury on the law of inferences which they may draw, which is a necessary part ——

*Judge:* I said they may draw such inferences.

*Wool:* On one certain thing, but you did not. It is not a question —

*Judge:* ——Do you wish to make a request for that?

*Wool:* I am making a request.

*Judge:* Will you give it to me?

*Wool:* Under the law it is sufficient for the respondent to indicate to the Court that the Court has failed to charge and the Respondent in this case, in pointing out to the Court that the Court has failed to charge on the matter of inferences, now requests this Honorable Court to instruct the Jury on what inferences they may draw and how they are to be drawn in connection with a case of this sort.

*Judge:* Are you going to prepare the instructions?

*Wool:* No, I am not, and the reason is this, that the Court is required to instruct the Jury on all the elements that concern a matter of a criminal nature, and when they are pointed out to the Court, as it is in this case, that it has not been charged, it is encumbent upon the Court to so charge, and so we are asking the Court to instruct on inferences. We ask the Court to note this is the only thing we are asking the Court to instruct on.

*Judge:* You give me the instructions.

*Wool:* I don't think we are obliged to. We are pointing out the Court has failed to carry out the duty ——

*Judge:* The Court is requesting you to give him a charge—are you going to?

*Wool:* No, I am not. May I have an exception to the Court's failure to charge? You said if we have some other requests— do you want exceptions?

*Judge:* Yes, set them down."

█ It is apparent from the foregoing that respondent's counsel felt he was entitled to, and desired, some further instruction on the subject matter of inferences, but at no time did he direct the court's attention to the nature of the instruction desired, notwithstanding the court's persistent efforts to solicit from counsel the precise instruction to which he claimed to be entitled. It has long been the established rule of this jurisdiction, as well as most others, that an exception must fairly direct the attention of the court to the claimed error so that the court might be afforded an opportunity to correct the situation or supply omissions. *Hall* v. *Royce,* 109 Vt. 99, 108, 192 Atl, 193; *State* v. *Coburn,* 122 Vt. 102, 106, 165 A.2d 349; *State* v. *Noyes,* 111 Vt. 178, 181, 9 A.2d 101.

█ The respondent in merely requesting the court "to instruct the Jury on what inferences they may draw, and how they may be drawn, and how they are to be drawn in connection with a case of this sort," without more, did not reasonably indicate to the court the precise instruction he was requesting or point out to the court the evidence from which it was claimed the inference he had in mind might be drawn.

It is obvious that it was this nebulousness that prompted the court to persist in its efforts to obtain from respondent what further instruction he wanted on the subject of inferences.

We conclude, and so hold, that respondent's exceptions did not fairly and reasonably indicate to the court the particulars in which such instructions were claimed to be in error, or sufficiently apprise the court of the specific instruction he desired on the subject matter of inferences. *State* v. *Jackson,* 101 Vt. 416, 418, 139 Atl. 776; *State* v. *Hood,* 123 Vt. 273, 277, 187 A.2d 499; *State* v. *Murray,* 123 Vt. 232, 233, 186 A.2d 193.

If we can assume the instruction the respondent had in mind was that the jury should be told it could not base an inference upon an inference to establish respondent's guilt, we discern no harm done the respondent by the court's failure to so charge, as the jury had before it an abundance of evidence that the respondent was driving at an excessive rate of speed at the time in question, and failed to exercise proper control of his vehicle. See *Huestis* v. *Estate of Lapham,* 113 Vt. 191, 198, 32 A.2d 115; *Capello's Admr.* v. *Aero Mayflower Transit*

*Co.* 116 Vt. 64, 67, 68 A.2d 913 ; *State* v. *Fox,* 123 Vt. 82, 86, 181 A.2d 74 for a discussion of inferences.

We may observe in passing, that respondent has not suffered the loss of any rights by failing to properly save his exception, as the court, in charging the jury "when all of the evidence of a respondent's guilt is circumstantial, it is incumbent upon the State to produce evidence of circumstances which exclude every reasonable theory consistent with respondent's innocence," gave the respondent the advantage of a charge that the evidence did not warrant. This instruction; if ever essential in this jurisdiction, is required only in cases where the evidence is wholly and entirely circumstantial. *State* v. *Marston,* 82 Vt. 250, 251, 72 Atl. 1075; *State* v. *Sanford,* 118 Vt. 242, 244, 108 A.2d 516; *State* v. *Fox,* 123 Vt. 82, 85, 181 A.2d 74.

As we have seen, there was direct evidence here for the jury's consideration and the above instruction was not necessary or essential. The charge as given was full, fair and correct on all the issues, theories and claims so far as the evidence required. This is all the respondent was entitled to. *State* v. *Brisson,* 119 Vt. 48, 54, 117 A.2d 255. We find no merit in respondent's exceptions.

It is difficult for us to understand why this review was sought, for even without the aid of direct evidence, the circumstantial evidence is so cogent and compelling that it excludes every reasonable inference consistent with the respondent's innocence, and the instruction indicated in respondent's brief could not conceivably have changed the result.

*The claimed exception is overruled. Judgment Affirmed. Let execution be done.*