RALPH CARVAGE *v.* GEORGE STOWELL ET AL.

(55 A2d 188)

May Term, 1947.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion Filed October 7, 1947.

*Irwin S. Kendall, Gibson, Gibson & Crispe (Ralph Chapman* on the brief) for the plaintiff.

*William C. Sennett* and *Osmer C. Fitts* for the defendants.

STURTEVANT, J. This is a contract action in which the plaintiff seeks to recover damages which he claims resulted from the failure of the defendants to sell and deliver to him certain personal property and real estate in accordance with an agreement alleged to have been made with them. At the close of the plaintiff's evidence the defendants moved for a directed verdict. This motion was granted as to the defendant Della and denied as to the other defendant. At the close of all the evidence the defendant George again moved for a directed verdict and his motion was then granted. The case is here on exceptions by the plaintiff to the action of the court in directing these verdicts.

While there was a sharp conflict as to much of the evidence, yet, viewing it in the light most favorable to the plaintiff, the jury could reasonably have found the following facts.

The defendants are husband and wife and own a farm in South Windham where they reside. They also own a considerable quantity of farming tools and livestock kept on the farm and used in connection with it. The plaintiff lives a short distance from the defendants, in the town of Jamaica. On the evening of June 27, 1946, the plaintiff called at defendants' farm for the purpose of negotiating for the purchase of some livestock. He talked with the defendant George on that occasion but had no conversation with the other defendant. The defendant George called off a list of the livestock and farming tools on the farm and the plaintiff wrote these items down in his note book as they were called. Also included in this list was the Stowell farm. The plaintiff made a lump sum offer for the whole, including both personal property and real estate, in the sum of $5500.00. This lump sum was arrived at by considering the personal property at about $3000.00 and the farm at $2500.00, but it was "all lumped together in the offer". George told the plaintiff that he would have to consult with his wife about the matter and would let him know the following day whether or not they would accept his offer. On the following day George called at the plaintiff's residence and told him "it is a deal". The plaintiff then paid George $50.00 and took from him a receipt for same in words and figures as follows:

"June 28, 1946.

Received from Ralph Carvage $50.00 deposit on personal property, livestock and farm as listed. Balance $5450.00."

Signed     "George Stowell."

At that time both George and the plaintiff also signed the list of property made the previous evening. On that occasion George told the plaintiff that he could have from three weeks to a month in which to pay for the property. A few days later the plaintiff entered on the Stowell farm under agreement with George, installed a hay fork, made repairs to some of the farm machinery and started haying. He finished haying about July 10, 1946, having put in the barns on the farm 25 to 30 tons of hay. He paid for the machinery repairs, shoeing the horses, and for the installing of the hay fork, also for the help to do the haying. Some of the money paid out for labor went to George and his two sons.

The plaintiff arranged for the sale of all this property, real and personal, at public auction on July 18, 1946, engaged an auctioneer to get out the advertising and attend to same and to take charge of the sale, all of which was known to the defendant. On the evening of July 11, 1946, George went to the plaintiff's house and told him to do nothing more about the sale, that the deal was off and he would not go through with the contract. He returned the $50.00 paid by the plaintiff, also a check for $450.00 which the plaintiff had also paid on the purchase price. The plaintiff's reply to this was, "I will sue you if you do not go through with the deal". On this occasion George told the plaintiff to keep off his premises. On July 13 the plaintiff requested George to let him have the farm and go through with the deal but George refused to do so. Two days later the plaintiff tried to deliver to George at the latter's residence a letter in words and figures as follows:

"Jamaica, Vt.
July 15, 1946

Mr. and Mrs. George Stowell
South Windham
Vermont

Dear Sir & Madam:

In accordance with the provisions of an option signed by you on the 28th day of June, 1946, I am

hereby notifying you that it is my intention to take up said option and that on the 17th day of July, 1946, I will be in Brattleboro at the Brattleboro Trust Company for the purpose of accepting your deed to the farm and your Bill of Sale to livestock, and personal property as listed on June 28th, 1946, and will pay you for the purchase of the property as mentioned in said option according to the terms of the option.

These terms according to the option and contract, I am now ready and willing to carry out.

Yours very truly,

Ralph Carvage."

George refused to accept the letter. The plaintiff put the letter and list of property included in the sale in the glove compartment of his car and left his car parked in his yard that night. On the following morning both of these papers were gone. The plaintiff obtained a copy of the letter and on that day, July 16, 1946, called at the Stowell farm, left this copy at the door of the Stowell house, rapped, and walked away. Mrs. Stowell came to the door, saw the letter, kicked it into the road and left it there. The letter was picked up by a neighbor but was not delivered to the defendants until a few days before the trial. Because of the defendants' absolute refusal to go through with the contract, the plaintiff was obliged to abandon his plans for the auction sale which he had planned to have on July 18, 1946. He paid his auctioneer for getting out and posting auction bills and newspaper advertising in preparation for the sale about $113.00.

■ We first consider the plaintiff's exceptions to the action of the court in directing a verdict for the defendant Della. It appears that the plaintiff agreed to pay a lump sum, viz. $5500.00 to defendants as the purchase price of the personal property and real estate as listed. He was to have from three weeks to a month to make such payment. It follows that the contract was entire and not divisible and also that it was executory. *Waite* v. *Stanley*, 88 Vt 407, 410, 92A 633, LRA 1916C 886, and cases cited. Since Della had signed no memorandum of the agreement, no action at law or in equity could be maintained against her, either to enforce

the contract or to recover damages for non-performance of its provisions. The contract was not unlawful, but as to her its enforcement is forbidden by statute. P. L. 1675; *Bedell* v. *Tracy,* 65 Vt 494, 499, 26A 1031, and cases cited. The plaintiff has cited several cases, all in chancery, in support of his contention that the case at bar has been taken out of the statute by partial performance. The cases cited hold that, when possession of real estate has been given and taken and the contract so far performed that it would be a fraud on the purchaser to deny specific performance, equity will compel such performance. *Bedell* v. *Tracy,* 65 Vt 494, 499, 26A 1031, and cases cited. But the case at bar is not a suit in chancery for specific performance. Payment of the purchase price by the buyer will not remove a case of this kind from the provisions of the statute nor provide sufficient grounds for a bill for specific performance. *Bedell* v. *Tracy,* 65 Vt 494, 499, 26A 1031, and cases cited. The plaintiff also contends that Della was liable, with her husband, for work and labor performed by the plaintiff for their benefit on premises owned by them. But this is not an action to recover for work and labor performed at the request and for the benefit of the defendants. It is an action for the breach of a contract for sale of real estate and personal property. It follows that this contention of the plaintiff is without merit.

The plaintiff also contends that Della adopted and ratified the written contract signed by her husband and made same her own and for that reason the statute P. L. 1675 does not apply to her. The only evidence pointed out by the plaintiff in support of this claim is the fact that the plaintiff delivered a check for $450.00 to her and asked her to give it to her husband which she did. When the plaintiff offered this check in evidence he specifically stated that he made no claim that the check bound the defendant Della in any way. That this evidence does not have the force claimed for it by the plaintiff is too clear to require further comment. The direction of a verdict in favor of the defendant Della was without error.

The motion of the defendant George, made at the close of all the evidence, contained, among others, the following grounds. The plaintiff by offering to perform the contract and demanding performance, after the defendant George had repudiated the agreement, thereby made an election to stand on the contract, waived his right to treat the repudiation as a breach, and kept the contract

open for the benefit of both parties so that he himself was bound to perform all conditions according to the terms of the agreement. The letter of July 15, 1946, was not in accordance with the terms of the agreement since it proposed to close the contract at Brattleboro instead of at the premises of the defendants and therefore the plaintiff, having himself breached the agreement, was without right to maintain this action. This contention is in accordance with the so-called English rule as stated in CJS Vol. 17, p. 978, § 472, under heading "Rejection of Renunciation". The plaintiff contends that this doctrine has been changed by the authorities in this country and does not apply in this state.

In our consideration of this question we shall hereinafter refer to the defendant George as the defendant, unless otherwise indicated. While it is true that in contracts where the promises are mutual and dependent neither party can put the other in default without himself giving notice to the other that he is ready and willing to perform, it is also true that this rule does not apply when, at maturity or before the time of performance has arrived, one of the parties makes positive and unequivocal refusal to perform. Such refusal excuses the other party from tendering performance on his part because the law does not require the doing of a useless act or the doing of that which would be only a vain and idle ceremony. *Hambleton* v. *Aja Granite Co.,* 96 Vt 199, 202, 203, 118A 878, and cases cited; 12 Am Jur p. 889, § 333. Professor Williston in his work on contracts, Vol. 5, Revised Ed., § 1337 states: "The rights of a party to a bilateral contract of mutually dependent promises upon an anticipatory repudiation by the other party will then be: (1) To rescind the contract altogether, and if any performance has already been rendered by the injured party, to recover its value on principles of quasi-contract; (2) to elect to treat the repudiation as a breach, either by bringing suit promptly, or by making some change of position, or (3) to await the time for performance of the contract and bring suit after that time has arrived. Even if the plaintiff thus elects to wait until the stated time for performance, he will be excused from the necessity of performing or being ready to perform on his own part unless the repudiating party withdraws his repudiation before a change of position by the injured party makes this performance more burdensome. Indeed, the injured party has no right to perform, if by so doing, damages will be enhanced." These principles of law are

also stated as the majority rule in 12 Am Jur § 392, beginning on page 970.

▇ Since the defendant repudiated the contract before the time for performance had arrived, his act was an anticipatory breach of the agreement. 12 Am Jur p. 969, § 391. While the' plaintiff, upon defendant's repudiation of the contract, could have brought his action at once for breach of the agreement, he was not obliged to do so and thereby be deprived of his option to take advantage of any one of the three courses open to him. The law gave him the right to await the time for performance and then bring his action for the breach of the contract if the repudiation had not been withdrawn before or at that time. 12 Am Jur § 392, at page 972; Williston, supra, §§ 1334, 1337.

▇ It will be helpful to note the meaning of the word "tender" as used in the expression "tender of performance" when applied to contracts such as the one we are now considering. In such cases the word has a different meaning than when used in connection with the payment of money to extinguish a debt, as in *Morton* v. *Wells,* 1 Tyler 381, cited by the defendant. As applied to the case before us, the word "means only a readiness and willingness, accompanied with an ability, on the part of one of the parties, to do the act that the agreement requires him to perform, provided the other will concurrently do the things that he is required by it to do, and a notice by the former to the latter of such readiness. . . . It is not an absolute unconditional offer to do or transfer anything at all events, but it is in its nature conditional only, and dependent on, and to be performed only in case of, the readiness of the other party to perform his part of the agreement." *Amsden* v. *Atwood,* 68 Vt 322, 335, 336, 35A 311, 316, 12 Am Jur page 891, § 334. Applying this rule to the letter of July 15, 1946, the result is that the plaintiff proposed to do the things as therein stated only on the condition that the defendant would retract his repudiation and perform the things required of him by the agreement. Whether we construe the letter to be a request or demand for performance, the result is the same, because, just so long as the defendant refused to retract his repudiation of the agreement, plaintiff's performance of his part of the agreement was absolutely blocked and nothing could be accomplished by way of completing the contract. To hold that, by his statements made in the letter in question, the plaintiff expressed a determination and purpose to perform his part of the

194

agreement and to take title to the property, regardless of whether the defendant retracted his repudiation or not, and that such statements were not conditional in their nature and quality would be to hold that the plaintiff thereby announced his intention to perform a legal impossibility. It follows that the defendant's refusal to receive delivery of the letter and his continuing to stand on his repudiation of the contract left the parties in the same position they were in before the letter was written. *Ackerman* v. *Carpenter,* 113 Vt 77, 82, 29A2d 922. The plaintiff waived no rights by his offer or demand of performance after defendant's anticipatory breach of the contract. The right to treat such repudiation as a breach of the agreement still remained with the plaintiff. 12 Am Jur page 974, § 395; Williston, supra, 1334, 1337; Restatement of the Law of Contracts, Vol. 1, § 320; *Bu-vi-bar Petroleum Corp.* v. *Krow,* 40 F2d 488, 69 ALR 1295; *United Press Assn.* v. *National Newspaper Assn.,* 237 F 547; *Tri-Bullion Smelt. & D. Co.* v. *Jacobsen* 233 F 646. See Annotation 69 ALR page 1303.

That part of § 320, Vol. 1, of the Restatement of the Law of Contracts, above cited, which is applicable to the question here, is as follows: "Manifestation by the injured party of a purpose to allow or to require performance by the promisor in spite of repudiation by him, does not nullify its effect as a breach, or prevent it from excusing performance of conditions, . . . The word "conditions" as here used refers to conditions of contracts.

By the defendant's conduct in insisting on his repudiation of the contract the plaintiff was forced into a changed position, because he was prevented from proceeding with the sale of the property in question at public auction on July 18, 1946, as he had advertised he would do, of all of which the defendant had knowledge.

From the foregoing it follows, and therefore we hold, that the plaintiff, by his statements in his letter of July 15, 1946, did not make an irrevocable election to stand upon the contract and did not thereby waive his right to treat the defendant's repudiation thereof as a breach of the agreement. In so doing we follow the law as set forth in the Restatement of the Law of Contracts, Vol. 1, § 320, supra, and other authorities hereinbefore cited, and which is based on principles of reason and justice, and we reject the so-called English rule. *Lowell* v. *Wheeler's Estate,* 95 Vt 113, 112A 361. cited by defendant, is not inconsistent with the conclusions we

have here reached. That case has to do with a contract for services. After working for some time, the employee left her employer's service for what she claimed was a justifiable cause. She later returned and completed her part of the contract. It was held that under these circumstances it could reasonably be found that the employer waived the breach of the contract.

The defendant's claim that the plaintiff's letter of July 15, 1946, was not in accordance with the terms of the contract avails him nothing. When the plaintiff attempted to deliver this letter, the defendant refused to receive it and made no objections to the nature and quality of the offer. He then gave the plaintiff to understand that he insisted on standing on his repudiation of the contract. If the offer was faulty, a question which we do not decide, and the defendant had seasonably stated his objections to it, the fault could have been corrected easily. The defendant's objections to the offer, made for the first time after the plaintiff had brought his action, came too late and are without force or effect. *Curtiss* v. *Greenbanks*, 24 Vt 536, 540; *Rosenberg* v. *Taft et al.*, 94 Vt 458, 467, 111A 583. While the two cases last cited deal with tender of money in satisfaction of a debt, the rule is the same as to tender of performance by a party to a contract such as the one before us. 17 CJS page 991, § 487. Also see 12 Am Jur pp. 891, 892, § 334.

The result is: *Judgment for the defendant Della M. Stowell affirmed, and judgment for the defendant George Stowell reversed, and cause remanded.*