## State of Vermont v. Lee Graves

[122 A2d 840]

January Term, 1956.

Present: **Jeffords, C. J., Cleary, Adams, and Hulburd, JJ., and Holden, Supr. J.**

Opinion Filed May 1, 1956.

*Maxwell L. Baton* for the respondent.

*Rudolph J. Daley*, State's Attorney, and *Frederick M. Reed*, Deputy Attorney General, for the State.

**Hulburd, J.** The respondent was prosecuted in Orleans Municipal Court for careless and negligent operation of a motor vehicle resulting in the death of one Carmen Roy. Trial was by jury and a verdict of "guilty" was returned. The respondent brings his exceptions to this Court claiming error in a number of respects.

■ The first exception briefed by the respondent is to the form of the oath administered to the jury. He claims that although the oath administered conformed to V. S. 47, §10,611, Form 3, it was in violation of the State's Constitution. It is our policy to consider constitutional questions only when it has been determined that the case is not to be disposed of on other grounds. *State* v. *Hall*, 96 Vt 379, 382, 119 A 884. Accordingly, we will proceed to deal with the other exceptions briefed by the respondent.

The first of these are relative to the admission of certain photographs in connection with the testimony of the State's witness, Guy Poissant. To consider these exceptions properly' an understanding of what Poissant's testimony was is necessary. Poissant lives in Rock Island, Quebec. He is a young man twenty-two years of age. On May 15, 1954, he took his motor cycle and went to the home of a young lady by the name of Carmen Roy. He invited her to go out with him for the evening and they left Rock Island on the motor cycle with Miss Roy behind Poissant. They came to Newport, Vermont and spent the evening there. At about 11:45 that night they started on the return trip. As they were leaving Newport on East Main Street, they had reached a point near the intersection of East Main Street and Sias Avenue when Poissant saw a car coming toward him, and then a second automobile pulled out from behind the first car, trying to pass it, so that there were four headlights bearing down on him coming from the two cars side by side on the road. Poissant pulled to the right trying to evade the passing car. There was a sound of brakes and a head-on collision. Poissant and his passenger were thrown into the air. Although Poissant was

not badly hurt, Carmen Roy died almost instantly. Police officers came to the scene shortly; pictures and measurements were taken.

Two of the photographs taken were shown to witness, Guy Poissant. They are State's exhibits No. 1 and No. 2. Both purport to be pictures taken at the scene of the accident, showing the witness' motor cycle lying near the edge of the road and the respondent's automobile just beyond it standing obliquely athwart Poissant's right lane as he was proceeding toward Rock Island. The ground beneath where the car stands is covered with a pool extending out from under its radiator. A smaller pool of a different shade surrounds the shattered motor cycle. The witness testified that the former was water from the radiator of the respondent's car and the latter oil from the tank of the motor cycle. Both pictures show practically the same scene from slightly different angles, State's Exhibit No. 1 being a little closer view. Poissant was asked whether or not either his motor cycle or the automobile had been moved after the accident before the officers got to the scene. He answered, "I don't believe they had been moved." To the question: "Is that a fair representation of what you saw that night after the collision?" Poissant replied, "Yes". He also testified that State's Exhibit No. 2 is a fair representation of the condition of his motor cycle after the collision. To be sure Poissant afterward qualified his statement somewhat saying, "I don't know exactly how the motor cycle was after the collision. I wouldn't know whether or not that was exactly the position after the accident." In the end, however, he stated again that he believed that the vehicles weren't moved although he was not sure.

■ At the trial, the respondent's only concern in connection with the photographs was what they appeared to show as to the extent of the damage to the motor cycle. Counsel for the respondent expressly stated that he had no objection to the photographs so far as they showed "where it lay". He now claims that the exhibits were inadmissible because the witness testified that he could not be entirely certain as to whether the vehicles, following the accident, were in the exact position shown by the pictures, although he thought that they hadn't

been moved. Respondent can not object in this Court to that which he had no objection to in the trial court. The appellant is limited to the objection he raised below. *Valiquette* v. *Smith*, 108 Vt 121, 125, 183 A 483; *Lunnie* v. *Gadapee*, 116 Vt 261, 265, 73 A2d 312.

■ Even if the respondent's exception reached the objection he is now making, no error is shown. By its ruling, the court below impliedly found that the witness's testimony sufficiently verified the photographs and that they were so substantially accurate as to be helpful to the jury. No abuse of discretion appears. In the absence of such an abuse, the court's ruling below will not be interfered with. *State* v. *Gravelle*, 117 Vt 238, 241, 89 A2d 111. It might be added that when the respondent later took the stand he testified that State's exhibit No. 1 fairly represented the position of his car when it came to rest after the accident. In view of his testimony, no harm can now be claimed in that respect. Compare *State* v. *Pierce*, 88 Vt 277, 278, 92 A 218.

The respondent also excepted to the admission of State's exhibits No. 9, No. 10, and No. 12. These were diagrams of the highway with measurements to various points. They were prepared at the scene by a Newport police officer who did not claim that they were drawn to scale. The respondent maintains that the road shown by the drawings is too curved to correspond with Poissant's testimony. The officer testified that the diagrams gave a fair representation of "the way the road lay with reference to being straight." For reasons stated above in connection with the photographs, the diagrams were sufficiently verified and no abuse of discretion appears. Since the jury had the benefit of both pictures and a view of the scene of the accident, the diagrams, although they lacked the exactness of an engineer's blue print, [which they did not purport to be] could hardly mislead the jury as claimed.

It was brought out in the State's examination of Dean Gardner, Newport police officer, that the respondent was taken to the police station following the accident. As the respondent went into the police station, Gardner stood near by. He was asked if he smelled anything on the respondent's breath. The respondent's counsel objected to the question. A

lengthy discussion at the bench followed, the State claiming that it had a right to show that the respondent was under the influence of intoxicating liquor "as bearing upon his operation of this vehicle." Counsel for the respondent first contended that since the respondent was not charged in the complaint with operating a motor vehicle in a careless and negligent manner by reason of being under the influence of intoxicating liquor, the evidence was inadmissible. This position on the part of the respondent was not maintained, however. In the end he stated, "If the state's attorney claims and says that he will connect up such evidence with a showing that the respondent was under the influence so that his actions could have been governed in any way by it, with that statement from the state's attorney, I will withdraw my objections." The state's attorney responded, "I intend to connect as stated." The witness testified he smelled intoxicating liquor on the respondent's breath and the trial proceeded.

At no time thereafter was the claim made by the respondent that the State had failed to connect the testimony as stated. No motion to strike the testimony was made. The respondent having withdrawn his objection, it was his duty to call to the court's attention any claimed deficiency in the matter of connecting testimony. Having failed to do this, he has no exception available to him in this Court. *Scott, Admr.* v. *Bradford National Bank*, 107 Vt 226, 231, 179 A 149.

Following police officer Gardner, the State called Dr. C. D. Rublee as a witness. Having been duly qualified and having told of examining the respondent at the jail at about 1:30 the night of the accident, he testified, without objection on the part of the respondent, that the respondent at that time was in his opinion slightly under the influence of intoxicating liquor. The doctor testified that the respondent admitted to him that he had drunk one bottle of beer on the road at about midnight after leaving Derby for Newport, which would be shortly before the accident. The doctor further testified that the respondent did not claim to be ill nor hurt. During the examination the doctor observed that the respondent's balance was off, finger-to-nose test uncertain, and that he slurred his words in speaking. Thereafter the state's at-

torney asked the following question: "Doctor, I ask you, if, based upon your study of the effect of alcohol on the human system, your practical experience which you have testified to, the observations which you made of this man, and your conclusions testified to, whether or not the slightly under the influence which you found would have affected him in the control of an automobile at about 12 o'clock midnight that same day?" Under the respondent's objection the doctor answered, "I think it would affect his control of a car." The doctor further testified in effect under objection, that the mental process and reactions would have been affected.

The respondent claims that by admitting this testimony the court allowed the doctor to extend his opinion into "the field of baseless conjecture." If it can be fairly said that the court has done this, the respondent might well complain. An examination of the record, however, shows that the doctor's opinion was far from "baseless". The doctor had made a thorough examination of the respondent. He had tested him in many respects. He had observed that in the picking-up-of-a-coin test the respondent was "slow"; that he swayed slightly; that his eyes were blood shot; that his walking was fair and turning the same; that in the finger-to-nose test he was uncertain; that he slurred his words in speaking; in short at 1:30 A.M. in his opinion the respondent was slightly under the influence of intoxicating liquor. This opinion he had given without objection on the part of the respondent to his testimony.

The respondent asserts that there was no evidence as to whether or not the respondent had had anything to drink between the time of the accident at midnight and the examination at the jail at about one-thirty in the morning, and infers he must have had because a witness observing him five minutes after the accident noted no indications at that time. The record is otherwise; it shows that the respondent himself told the doctor he had had but one bottle of beer and that he had drunk it at about midnight on the road between Derby and Newport which would be just before the accident. Later when the respondent took the stand, he testified that he had had but one bottle of beer a little after eight while on the road

between Charlestown and Sutton. Although the evidence is at variance as to when the respondent had the "one bottle of beer", none of it is to the effect that it was after the accident and before the examination.

■ It is a commonplace matter to have a doctor examine an operator suspected of being under the influence of intoxicating liquor. It is seldom, if ever, that the doctor is immediately at hand to make the examination. There is always some lapse of time before reaching the doctor. Where, as here, there was no evidence of further drinking by the respondent between the accident and the examination, and no reasonable opportunity to do so, it was a matter of discretion on the part of the court in ruling on its admissibility. The court might reasonably have considered, in the circumstances, that the lapse of time between the accident and the examination tended to favor rather than be prejudicial to the respondent. It afforded a sobering-off period. No abuse of discretion appears. *State* v. *Stacy*, 104 Vt 379, 399, 160 A 257, 747; *State* v. *Lizotte*, 109 Vt 378, 384, 197 A 396. The record shows ample basis for the opinion brought out; hence the respondent has not brought himself within the holding of *Bliss* v. *Moore & Stoughton*, 112 Vt 185, 190, 22 A2d 315. In general the latitude of the examination of an expert witness is within the discretion of the trial court. 2 Wharton's Crim. Ev. [7th Ed.] 1778, Sec. 1017.

Before passing on the point which counsel for the respondent raises next, we will briefly summarize the evidence bearing on it. The respondent testified that between Derby Ctr. and Newport, Vermont, about a mile before the accident, he caught up with an automobile proceeding in the same direction. The respondent followed this car at a speed varying from twenty to thirty-five miles an hour. As it went around a curve on East Main Street entering Newport, and was "just coming out of it", the respondent was probably fifty feet behind. At this point the automobile in front of him, so the respondent testified, "stopped real quick or slowed down suddenly and I didn't know if I would be able to stop. * * *" When asked, "What brought it to your attention it had slowed down?" the respondent replied: "I didn't see him slow down. He was just

about ready to stop. I couldn't tell for sure he slowed down so quick." Following that the respondent said: "I tried my brakes, but I felt they weren't going to stop and I didn't see anything coming and I thought I would take a chance."

There was also in evidence a written statement given by the respondent on the night of the accident to police officer Gardner. In it the respondent described what happened as follows: "I was following a car which slowed down rather quick. I put on my brakes and my left front brake seemed to grab, so I started to go by the car to avoid hitting it. Instead of hitting the car I hit a motor cycle which I had not seen coming toward Derby, Vt."

At the conclusion of the court's instruction to the jury, counsel for the respondent took the following exception: "The respondent excepts to the failure of the court to charge the jury that regardless of the laws of the road that, nevertheless, the operator of a motor vehicle when confronted with an emergency which only gives him the choice of either having an accident or violating a law of the road, when as a reasonable prudent man he has the right to believe in those circumstances that he will not be as likely to have an accident by violating those rules as he would to adhere to them, that it is not only the respondent's right to in those circumstances violate the law of the road, as we may call it, but it is his duty. It is his duty to the extent that if the person injured by reason of his failure to exercise the last clear chance can prove that the other person could have avoided the accident by violating the rules of the road under the doctrine and as a last clear chance to avoid the accident, then in that event the person is liable. He is made liable for obeying the rules of the road. And it is the most important element in this whole case for the jury to know that."

By the foregoing, the respondent now claims that he was excepting to the court's failure to instruct the jury as to the "sudden emergency doctrine." In taking his exception to the court's failure to charge on this subject, did counsel meet the requirements necessary for saving a proper exception? Did the exception fairly direct the attention of the court to the

claimed error? That is the test. *In re Chisholm's Will*, 93 Vt 453, 456, 108 A 393; *Hall* v. *Royce*, 109 Vt 99, 107, 192 A 193.

■ An application of the test to the exception discloses that, far from directing the court's attention to the claimed error, it actually misdirected the court's attention to the doctrine of last clear chance which had no application to the case. A court cannot be expected to extract the good, reject the bad, and supply the missing in an exception. In short, a trial court can not properly be required to see more in an exception than what is fairly and reasonably plain. It has no duty to reconstruct an exception, and cannot be expected to, especially where it does not have the advantage of knowing what the exceptor will ultimately state that his object was. For the reasons stated the exception failed to meet the test of our cases.

■■ Lest the respondent should conclude that it was only a deficient exception which subjected him to a deficient charge, we take pains to add that we are far from convinced that he was entitled to an instruction under the sudden emergency rule. It is enough to say that the rule is not available to one who finds himself in peril through his own negligence. *Kennedy* v. *Laramee*, 115 Vt 358, 363, 61 A2d 547. As to the duty of a motorist trailing another automobile, see *Williamson* v. *Clark*, 103 Vt 288, 292, 153 A 448. A mere necessity for a quick action does not constitute an emergency within the rule wherein the situation or danger calling for such action is one which reasonably should have been anticipated and which the person charged with negligence should have been prepared to meet. A person's conduct is not necessarily to be judged according to the situation as it appeared to him. The proper test is how it would have appeared to an ordinary prudent person so situated. *Landry* v. *Hubert*, 100 Vt 268, 281, 137 A 97.

This leaves us with the necessity of considering briefly the respondent's remaining claim, namely, that the oath administered to the jury was unconstitutional. Counsel for the respondent points to the fact that the oath prescribed by statute [see V. S. 47, §10,611, Form 3] calls on jurors in a criminal case to "well and truly try * * * according to the evidence given them in court and the laws of the State." Such

an oath, he argues, deprives the jury of its constitutional "right" to acquit a respondent even if the law and the evidence require a conviction! This "right" springs, so he asserts, from Chap. 1 Art. 10 of our state constitution which guarantees a respondent the right to trial by jury, especially that part of the Article which says that "without the unanimous consent of which jury, he cannot be found guilty." To quote from the respondent's brief: "The jury may be well satisfied that under the law the respondent is in violation of it, but they may be equally satisfied that more humane reasons exist for a verdict of not guilty." He would have us hold that the oath prescribed by statute does not permit the jury this latitude and hence is unconstitutional.

 The short answer to this argument, and the obvious one, is that the oath prescribed by our statute [adopted in 1783 at the first legislative session] is almost exactly the same as that which was regularly administered to juries in criminal cases at the common law. This the respondent concedes. See also Thompson and Merriam, Juries Sec. 289. The Constitution in guaranteeing jury trial contemplated a jury trial as known to the common law. State v. Hirsch, 91 Vt 330, 335, 100 A 877. Since this is so, an oath conforming to the common law is in keeping with the Constitution. The cases are many showing that the Constitution is to be interpreted with reference to the common law. See State v. Paterson, 41 Vt 504, 519; State v. Phair, 48 Vt 366, 375; Quinn v. Halbert, 52 Vt 353, 366; State v. Burpee, 65 Vt 1, 34, 25 A 964, 19 LRA 145. Pertaining especially to the right to trial by jury, it has been held that the legislature may prescribe the mode and manner of jury trials in criminal causes provided it does not impair the right itself. In re Marron, 60 Vt 199, 201, 12 A 523.

 A construction of the Constitution which runs contrary to long established practice will not lightly be indulged in. It is only where the plain and obvious meaning is to the contrary that the Court will disturb a construction of the Constitution put upon it by long acquiescence and practice. State v. Stimpson, 78 Vt 124, 132, 62 A 14, 1 LRANS 1153. This is particularly true when the respondent attempts to

read something into the Constitution which clearly isn't there, and then says the prescribed oath contravenes it. The weight of more than a century and a half has fixed the construction of the Constitution in this regard too firmly to allow it to be shaken by an attempted interpretation which would fundamentally change the whole law enforcement problem.

The very purpose of the oath is to make it more likely than otherwise that juries will render verdicts which the law and evidence require in a particular case. It is not to provide them with a pretext for an escape from legal duty as the respondent would have it. Latitude for humane considerations is provided for by Chap. 2 §20 of the Constitution wherein power to grant pardons is conferred on the executive department where it naturally belongs. The respondent's exception on the constitutional question is without merit.

*Judgment that there is no error in the proceedings and that the respondent take nothing by his exceptions. Let execution be done.*