## Arlington Pond v. Lee Carter

[ 229 A.2d 248 ]

February Term, 1967

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed April 4, 1967

*Corsones & Hansen* for plaintiff.

*Bishop, Crowley & Jeffords* for defendant.

**Keyser, J.** The plaintiff, a real estate broker, brought this action in Rutland County Court to recover his commission under an exclusive listing agreement. Trial was by jury. Following a verdict and judgment for the plaintiff, the defendant appealed. He asserts error by the trial court on several grounds.

The defendant moved for a directed verdict at the close of plaintiff's evidence and again at the close of all of the evidence. The court overruled these motions which defendant claims was reversible error. The defendant has briefed two arguments in support of his contention that a directed verdict should have been granted.

First, he asserts "the better view of the law is that an 'able, ready and willing' buyer has not been produced and the commissions are not earned until the purchaser is bound in a manner not within the Statute of Frauds." The record does not reveal that the defendant made any reference below to the Statute of Frauds in support of his motion. This ground as it relates to the Statute of Frauds is raised in this Court for the first time and, not having been advanced below, is not for our consideration. *Gaylord* v. *Hoar,* 122 Vt. 143, 149, 165 A.2d 358. Secondly, defendant contends the wording of the exclusive sales agreement is such that an agreement signed by the buyer was necessary before the commission was earned.

In cases involving claims for commissions by real estate brokers, the first consideration must be as to the nature of the contract between

the seller and broker. The contract here was executed on October 9, 1964, and was for an exclusive listing for the sale of real estate located in Hydeville, Vermont, at the price of $9500.00. The pertinent paragraphs of the agreement follow:

"1. I hereby grant to you for the period of 12 months from this date, and thereafter until this agreement is revoked by fifteen days notice in writing, delivered to you, but in no event for a term of longer than 1 year, the exclusive power and authority to sell the property described on the reverse side hereof, for the price and upon the terms hereon set forth, or any other price or terms acceptable to me.

2. In consideration of the acceptance by you of this agency and of your efforts to secure a buyer for the property, I agree to pay you a commission of 10% on the gross sale price, whether such sale be made by you or me or by any other person acting for me in any behalf.

5. I agree to furnish a warranty deed showing a merchantable title.

7. I further agree that if a purchaser is found by you ready, able and willing to comply with the above-mentioned terms and I do not accept them I will pay you the above-mentioned commission.

8. Commission shall be deemed earned when the agreement of sale is executed by the buyer and seller and you are authorized to deduct all or part of your commission from the initial deposit at the time of signing of sales agreement.

10. As my agent, you are authorized to accept, receipt for, and hold all money paid or deposited as a binder thereon and should such deposit be forfeited by the purchaser you may retain one-half of such deposit as your compensation, but not exceeding the full amount of your commission."

On the reverse side this appears: "Owner Lee Carter."

In considering a motion for a directed verdict, the evidence must be viewed in the light most favorable to the party against whom the motion is made. The tendency of the evidence and its weight is to be considered. *Fuller* v. *Rutland,* 122 Vt. 284, 288, 171 A.2d 58.

The selling price under the listing agreement was $9500.00. The efforts of plaintiff to sell at this price were not fruitful and, after plaintiff discussed the situation with defendant, the latter agreed to a reduction in the selling price to $7000.00. After advertising the property at this figure, the plaintiff received an offer of $6000.00. He told the defendant of this who said he didn't think it was quite enough and he would like to talk with his boys about it. About a week later defendant told plaintiff he wanted $6000.00 net which plaintiff said would mean the price would be $6600.00. To this the defendant said "go ahead on that." This revised price was acceptable to the proposed purchaser and plaintiff so informed defendant. A few days later plaintiff received the purchaser's check for $600.00, and told defendant he had it. Plaintiff told defendant to see his lawyer to have a deed prepared and gave him the names of the purchaser and his wife. The defendant failed to come forward with a deed. Plaintiff saw defendant several times about getting it prepared and he said he would. After plaintiff had produced this buyer for the property, he learned through defendant's daughter-in-law that an estate was involved in the property but defendant still insisted he had the right to sell it. It developed that the property in question was not owned by the defendant but title was in his wife who had deceased about two years previously. She left surviving her, the defendant and two sons, one of whom was the administrator of his mother's estate. Plaintiff returned the deposit to the proposed purchaser after it became apparent the sale was not to be consummated.

The listing agreement granted the plaintiff the exclusive authority "to sell" the property. Even though the parties make use of such words as "sale," or "to sell" or "to make a sale," a contract that the broker will find a purchaser ready, able and willing to buy the property on the exact terms authorized or agreed to by the seller may result. The language of the instrument is construed to mean that the plaintiff was to produce a buyer ready, able and willing to buy on the terms of the agreement. This is plain from the phrases: "efforts to secure a buyer" and "if a purchaser is found by you." The agreement delegates no authority to plaintiff to execute a sales agreement between a purchaser and plaintiff in behalf of the defendant. The execution of such sales contract was reserved to be performed only by the seller himself as provided by Paragraph 8.

■ This paragraph of the listing agreement stipulates that the "commission shall be deemed earned when the agreement of sale is executed by the buyer and seller." Under the agreement completion or consummation of a sale was not a condition precedent to the earning of a commission but a mutually enforceable sales contract between the purchaser and the defendant was necessary.

No question is raised by the defendant but that the plaintiff produced a purchaser ready, able and willing to buy the listed property. The evidence tended to so prove. Plaintiff's evidence also tended to show the defendant had agreed to accept the buyer. He admits this in his brief. The evidence shows the plaintiff did all that Paragraph 7 of the listing agreement required him to do to be paid his commission unless by Paragraph 8 a written sales contract signed by the purchaser and defendant was a prerequisite to earning it.

Several cases decided by this court cited by the defendant are not in point. Those cases deal with situations where a binding sales contract was entered into by the buyer and seller, or where the person produced was not a ready, willing and able purchaser, or where the action was barred by the Statute of Frauds.

■ Clearly, as plaintiff argues, a broker is entitled to his commission where the proposed buyer and seller enter into a valid, binding contract for the purchase and sale of property even though the buyer declines to later honor his contract. *Benoit* v. *Wing,* 117 Vt. 477, 478, 479, 94 A.2d 237. This is also true where the failure of the purchaser to complete the sale as agreed results from the inability of the vendor to make a good title, and without fault on the part of the broker. *Wilson* v. *Mason,* 158 Ill. 304, 42 N.E. 134, 135. In either instance the broker's commission is deemed to have been earned.

■ The crux of defendant's argument is that a binding sales contract signed by the buyer was required by the exclusive listing agreement before plaintiff had earned his commission. The agreement required that the buyer and seller both sign the contract. Otherwise, the contract would be unilateral only and not constitute a mutually enforceable contract as contemplated by the listing agreement. The procurement of such sales contract is a requirement which the defendant could waive by his conduct. 12 Am. Jur. 2d, Brokers, §192. If he did waive it, the procurement of a binding sales contract was not a condition precedent to plaintiff earning his commission.

It is plain that the purchaser procured by plaintiff would have bought but for the fact that the defendant, although he accepted the sale, did not produce a warranty deed of the property. It thus appears that the sale negotiated by the plaintiff was defeated solely by the failure of defendant to make good his stipulation to furnish a warranty deed showing a mechantable title. The bargain fell through by defendant's fault or inability to complete it and not because of any fault or failure of the plaintiff. Even where the contract negotiated is void by reason of the statute of frauds, if the party procured by the broker is ready, able, and willing to perform, and performance is prevented solely by the employer, the broker will be entitled to his commissions. 12 Am. Jur. 2d, Brokers §192.

The fact that the purchaser was ready, able and willing to buy, and would have done so had he not been prevented by the defendant's failure to produce a warranty deed, must be regarded as controlling, and as dispensing with, and as a waiver of, the necessity of a binding sales contract, which might otherwise exist. *Hamburger & Dreyling* v. *Thomas,* 103 Texas 280, 126 S.W. 561; *Vaughan* v. *McCarthy,* 59 Minn. 199, 60 N.W. 1075; *Parker* v. *Walker,* 86 Tenn. 566, 8 S.W. 391; *Knowles* v. *Henderson,* 156 Fla. 31, 169 A.L.R. 600, 22 So. 2d 384; *Buono* v. *Cody,* 251 Mass. 286, 146 N.E. 703; 12 C.J.S., Brokers, §89, notes 57, 60.

We quote from *Knowles* v. *Henderson, supra,* at p. 385-386, 22 So.2d:

> "The weight of authority is to the effect that where a broker in good faith and in reliance upon his contract procures a purchaser ready, able and willing to buy the property in accordance with the terms fixed by the seller, and before the broker can effect the sale or procure a binding contract of purchase the seller defeats the transaction, not for any fault of the broker or purchaser but solely because the seller will not or cannot complete the transaction, then and in such case the broker is entitled to his commission, if the customer remains ready, able and willing to purchase, although the sale has not been fully completed; the strict terms of the contract between principal and broker as to completing the sale or procuring a binding contract of purchase from the customer being deemed waived by the principal. (Citing cases)."

Plaintiff told defendant the purchaser had agreed to pay his price of $6600.00 and also told defendant to "get the deed drawn up which

he said he would do." Defendant did not then or afterwards say anything about a sales contract being necessary between himself and the purchaser. Plaintiff saw defendant about six times "to prod" him to get the deed ready which he said he would do but never did.

This is ample support that the defendant waived the procurement of a binding sales contract.

■ Moreover, the listing contract was dependant upon the mutual promises of the parties. It was first breached by defendant's conduct. The long delay made his intention apparent that he was not going through with the sale and was tantamount to a refusal to proceed with it. This being obvious to the plaintiff he had the right to believe he was excused from having a sales contract executed. *Carvage* v. *Stowell,* 115 Vt. 187, 192, 55 A.2d 188.

■ Furthermore, from the evidence it is clear that invocation of the provisions of Paragraph 8 would be to require the performance of a useless act which the law does not require. *Carvage* v. *Stowell,* 115 Vt. 187, 192, 55 A.2d 188. The defendant in his situation was no more in a position to execute an enforceable sales contract with the purchaser than he was to execute and deliver a warranty deed.

The requirement of Paragraph 8 being withdrawn, plaintiff had performed what he undertook to do under his contract of employment and had earned his commission. *Campbell* v. *Kelley,* 116 Vt. 117, 70 A.2d 245; *Reynolds-McGinness* v. *Green,* 78 Vt. 28, 32.

Defendant's motion for a directed verdict was properly overruled.

The defendant claims the court erroneously excluded evidence, which he offered to produce for impeachment purposes by cross-examination of the plaintiff, to show that plaintiff had been convicted of Federal tax fraud and evasion.

This subject matter arose in the chambers before the introduction of any evidence. The following is the conclusion of what took place at that time:

"THE COURT: Well, we note in the statutes 12 V.S.A. §1608 was amended in 1959 and apparently it only amended as to provide that the conviction must have been within the past 15 years. Well, the Court understands your position, you offered to show that the plaintiff was convicted of tax evasion and comes within this statute because that crime involves moral turpitude, and he was convicted within the past 15 years. This is your offer is it?

MR. JEFFORDS: That's correct Your Honor.

THE COURT: The Court will rule that such evidence will be excluded and the Court concludes that *on that offer,* there is no showing of the commission of a crime involving moral turpitude which we understand means a crime for conduct which is not only socially undesirable but which is by its nature or base or depraved, and we cannot conclude that tax evasion, however unfortunate as it may be and undesirable that it falls within the definition. . . ." (Emphasis added).

12 V.S.A. §1608 relative to the competency of a witness who has been convicted of a crime provides in part as follows:

"The conviction of a crime involving moral turpitude within fifteen years shall be the only crime admissible in evidence given to affect the credibility of a witness."

The purpose of this statute is to remove a common law disability or incompetency. Under the statute it is not necessary to produce the record of conviction to attack the credibility of a witness. The fact of his conviction may be, and usually is, shown by the party himself on cross-examination. *Underwood* v. *Cray,* 94 Vt. 58, 61, 108 Atl. 513; *McGovern* v. *Hays & Smith,* 75 Vt. 104, 108, 53 Atl. 326.

However, at the same time the statute makes it a matter of legal right to attack the credibility of a witness by showing through independent evidence he has been convicted of a crime involving moral turpitude. *McGovern* v. *Hays & Smith, supra,* at p. 110.

The trial court has no discretionary power to receive evidence of a criminal conviction for an offense other than that involving moral turpitude on the subject of the credibility of a witness. *State* v. *Russ,* 122 Vt. 236, 238, 167 A.2d 528. Thus, when it is proposed to discredit a witness because of his conviction of a crime, the court must rule whether as a matter of law the crime involves moral turpitude.

In *State* v. *Fournier,* 123 Vt. 439, 440 (1963), 193 A.2d 924, this Court stated: "The conduct must not only be socially undesirable, which the law has made criminal, but it must, by its nature, be base or depraved. The Legislature undoubtedly intended to employ the distinction commonly observed between crimes mala in se, and crimes mala prohibita."

Conviction of income tax evasion under the Federal statutes may, or may not, be a crime involving moral turpitude. Title 26 of the U.S. Code §145(b) under which it appears the plaintiff was convicted does not make fraud a necessary element of the crime but it does make evasion of a tax a felony.

In the case of *In re Hallinan*, 43 Cal. 2d 243, 272 P.2d 768, 774, the court said: "Although every conviction for violating §145(c) may not involve moral turpitude, some convictions may . . . ." Compare *In re McShane*, 122 Vt. 442, 175 A.2d 508.

In the case of *Tseung Chu* v. *Cornell*, 9 Cir., 247 F.2d 929, 933, the court held that "an intent to defraud the government is a prerequisite to conviction under §145(b) and hence, a conviction thereof where such fraud is charged in the indictment, is conviction of a crime involving moral turpitude."

In the *Cornell* case, the court also said:

"Fraud may not be an essential element of the crime of willful attempt to defeat or evade the income tax (*U.S.* v. *Scharton*, 285 U.S. 518, 52 S.Ct. 416, 76 L.Ed. 917), but it can be a special part of that crime. Here fraud was charged as part and parcel of a crime, and to that crime so involving appellant's alleged fraudulent act, appellant plead nolo."

It would appear that the *Cornell* case, *supra*, stands for the proposition that only where the method of tax evasion charged in the indictment necessarily involves fraud, is a conviction on a plea of guilty or nolo contendere conclusive as to fraud or moral turpitude.

In his brief defendant quotes the judgment order of the Federal court in the tax case against the plaintiff. The record does not indicate that this document was shown to the trial court at any time or that it is an exhibit in the case. Consequently, it is neither available to show the facts contained therein nor for use in support of defendant's argument. The defendant made no assertion in his offer of fraudulent conduct by the plaintiff or that intent to defraud the United States was charged in the indictment. He merely offered to show plaintiff's conviction of income tax evasion under the Federal statutes. Moral turpitude is not to be presumed but is to be shown as a fact.

[ On the basis of defendant's offer the trial court reached the conclusion that the evidence was inadmissible under 12 V.S.A. §1608.

When the court ruled it would not allow the defendant to cross-examine the plaintiff on this matter, it was incumbent upon the defendant to produce the record of plaintiff's conviction so that the court could determine whether or not the crime involved moral turpitude. His failure to do so after the preliminary ruling by the court renders the ruling proper in the absence of the record itself. *Underwood* v. *Cray, supra,* at p. 61.

Defendant also argues that perjury was involved by plaintiff signing his federal tax returns. This argument was not presented to the court below when the ruling was made and is improperly advanced in this court.

The defendant's next exception is to the refusal of the court to rule, as requested, that the listing agreement was ambiguous. The court said it was "unable to find ambiguity or uncertainty or vagueness in the contract."

If the language of the instrument is clear and unambiguous its intent cannot be altered by evidence of extraneous circumstances; and in such situation the instrument is to be interpreted by its own language, and the understanding of the parties must be deemed to be that which their own written instrument declares. *Cross-Abbott* v. *Howards, Inc.,* 124 Vt. 439, 441, 207 A.2d 134.

The defendant argues that there was no provision which deals with the situation where the seller accepts the buyer but is unable to go through with the agreement. He concedes that plaintiff's evidence tends to show such was the situation prevailing here. This he says generates an ambiguity in the contract and this should have allowed him "to introduce evidence of custom or other evidence to show the understanding of the parties with respect to this circumstance."

It is not what provisions the listing argreement fails to stipulate but rather what they actually do stipulate and the language used to express its terms which controls in deciding the question of ambiguity. The listing agreement clearly expresses the intention and the undertaking of the parties. The ruling below is without error.

The defendant also urges reversible error by the trial court in allowing the plaintiff to orally amend his complaint to include a count in quantum meruit.

Before evidence was introduced the trial court granted defendant's motion to amend his answer. The plaintiff then moved to amend his

complaint by adding a second count to recover in quantum meruit for the services rendered by plaintiff to defendant. The court also allowed this amendment.

This count was later withdrawn by the plaintiff and the evidence relating to it was effectively charged out of the case by the court.

In any event, the motion being a matter of pleading and practice was addressed to the discretion of the trial court. *Vaillancourt* v. *Dutton,* 115 Vt. 36, 38, 50 A.2d 762. Unless it appears that the court withheld or abused its discretion, the question is not reviewable. *John* v. *Fernandez,* 124 Vt. 346, 348, 205 A.2d 552. No abuse of discretion has been demonstrated by the defendant. The exception is overruled.

The defendant duly made ten written requests to charge. At the conclusion of the charge the defendant took an exception in the following words: "The defendant excepts to the Court's charge in substance or as charged as requestion in 2 through 12, I believe it was; . . ." (sic).

As we have decided numerous times, this exception was too general and is not well taken. An exception to the failure of the court to comply with numerous numbered requests to charge, by reference to the numbers of the requests, is too general to be availing. *Farmers' Exchange* v. *Brown,* 106 Vt. 65, 70, 169 Atl. 906; *Leblanc* v. *Deslandes,* 117 Vt. 248, 254, 90 A.2d 802.

The test for saving a valid exception to the court's failure to charge is whether the exception fairly directs the attention of the court to the claimed error. *Merrill* v. *Reed,* 123 Vt. 248, 255, 185 A.2d 737; *State* v. *Graves,* 119 Vt. 205, 213-214, 122 A.2d 840; *Croteau* v. *Allbee,* 117 Vt. 332, 334, 91 A.2d 803; *Little* v. *Loud,* 112 Vt. 299, 302, 23 A.2d 628.

The court said in the *Graves* case, *supra,* at p. 214: "In short, a trial court can not properly be required to see more in an exception than what is fairly and reasonably plain. It has no duty to reconstruct an exception, and cannot be expected to, especially where it does not have the advantage of knowing what the exceptor will ultimately state his object was."

Although the taking of formal exceptions to the rulings or orders of court is eliminated by 12 V.S.A. §2381, it does not override

the rule laid down in *State* v. *Graves, supra.* Our cases have adhered to this rule since the enactment of §2381, *supra. State* v. *Stone,* 124 Vt. 215, 216, 201 A.2d 703; *State* v. *Hood,* 123 Vt. 277, 278, 187 A.2d 499; *State* v. *Murray,* 123 Vt. 232, 233, 186 A.2d 193; *State* v. *Coburn,* 122 Vt. 102, 106, 165 A.2d 349.

The exception pointed out no specific deficiency in the charge nor did it make known to the court the question defendant was seeking to raise.

For the reasons reviewed above, the exception failed to meet the test of our cases and cannot be sustained.

*Judgment affirmed.*