## State of Vermont v. John S. Savo, Jr.

[446 A.2d 786]

No. 220-81

Present: Barney, C.J., Billings, Hill and Underwood, JJ., and Shangraw, C.J. (Ret.), Specially Assigned

Opinion Filed April 6, 1982

*Richard G. English,* Addison County State's Attorney, Middlebury, and (On the Briefs) *John T. Quinn,* Deputy State's Attorney, Middlebury, *Susan R. Harritt,* Assistant Attorney General, Montpelier, and *Dale O. Gray,* Caledonia County State's Attorney, St. Johnsbury, for Plaintiff.

*Andrew B. Crane,* Defender General, *William A. Nelson,* Appellate Defender, and *Nancy E. Kaufman,* Montpelier, for Defendant.

**Barney, C.J.** The defendant appeals for the third time from his 1976 conviction of armed robbery under 13 V.S.A. § 608(b) for which he is presently serving a sentence of ten to fifteen years imprisonment.

The first appeal in this case was heard by the Court in April, 1978, and was dismissed under V.R.A.P. 4, as untimely filed. *State* v. *Savo,* 136 Vt. 330, 388 A.2d 391 (1978). The defendant then sought post-conviction relief pursuant to 13 V.S.A. § 7131, on a claim that counsel's failure to file a timely notice of appeal violated his constitutional right to effective counsel.

The trial court agreed with the defendant. It went on to consider the merits of the claim and denied relief. The defendant appealed again. On the second appeal this Court reversed, ruling that the trial court had exceeded its jurisdiction in deciding the merits of the case, and giving the defendant leave to file a new appeal as provided for in our Rules. *In re Savo,* 139 Vt. 527, 431 A.2d 482 (1981). This third notice of appeal was duly filed on May 14, 1981.

We now reach on this appeal the defendant's four claims of error below. The first challenges the trial court's denial of his motion to exclude proof of his prior convictions. The second questions the admission into evidence of a pair of cut-off tights which the state's attorney represented to be those worn by the defendant as a mask during the robbery. Third is a claim that pretrial and in-court identifications were erroneously admitted. And finally, the defendant charges im-

proper and prejudicial closing argument by the prosecutor. We consider the claims in the order they were presented.

The defendant raised a defense of alibi. He brought a motion to exclude his record of prior convictions from use at trial to impeach his credibility if he chose to testify on his own behalf. This record included three separate convictions on a total of seven counts of breaking and entering, one conviction of escape, and a conviction of grand larceny over a period of three and a half years directly preceding the trial.

At hearing, the defendant argued for adoption of the federal standard for admission of prior convictions, which gives the court discretion to weigh the probative value of the criminal record against the prejudicial impact its admission would have on the defendant. His position was that absent conclusive case law in Vermont, 12 V.S.A. § 1608 should be read to give Vermont courts this same discretionary power, and that a proper exercise of that discretion in his case would require exclusion of the criminal record.

The state's attorney maintained that under *Pond v. Carter*, 126 Vt. 299, 229 A.2d 248 (1967), there was no discretionary power in the court to exclude convictions that met the statutory requirement of being convictions for crimes involving moral turpitude occurring within fifteen years, introduced to impeach the credibility of the witness. He argued that the decision to introduce such evidence belonged solely to the state's attorney, who could proceed as a matter of right.

Although the record below reflects only the hearing on the motion and not the trial court's ruling or its basis, we can fairly conclude that the motion was denied, since defense counsel brought out the information when the defendant took the stand to testify in his own defense.

Furthermore, after filing the current notice of appeal, but prior to argument, the defendant attempted to reconstruct the mental processes of the trial court for the record on appeal, by filing a Statement of Proceedings pursuant to V.R.A.P. 10(c), for settlement and approval by the judge who decided the motion below.

A hearing on the Statement of Proceedings was held on October 13, 1981, and resulted in approval of the following statements: (1) that the record did not contain the court's

ruling on the motion to exclude; (2) that the court has no present recollection of whether it had ruled on the motion; and (3) that based upon a reconstruction of events the court believes that a ruling was made following *Pond* v. *Carter* to deny the defendant's motion.

The defendant's position, based on the record as supplemented by the Statement of Proceedings, is that the trial court denied its motion to exclude the criminal record only after reading *Pond* v. *Carter* to say that a trial court has no discretion to exclude such evidence, and must admit it as a matter of right. He argues that since our recent decision in *State* v. *Gardner* held that "the cross-examination of a witness concerning prior convictions is subject to the discretion of the trial court," 139 Vt. 456, 458, 433 A.2d 249, 250 (1981), the decision of the trial judge in this case was reversible error. We do not agree.

Discretionary rulings are not subject to review if there is a reasonable basis for the court's action. *State* v. *Ahearn*, 137 Vt. 253, 267, 403 A.2d 696, 705 (1979). The burden of proof is on the party alleging the abuse. *State* v. *Kasper*, 137 Vt. 184, 210, 404 A.2d 85, 99 (1979). To support a claim of error there must be a showing that the court failed to exercise its discretion, or exercised it for reasons clearly untenable or to an extent clearly unreasonable. *State* v. *Ahearn*, *supra*, 137 Vt. at 267, 403 A.2d at 705; *State* v. *Morrill*, 127 Vt. 506, 510, 253 A.2d 142, 145 (1969).

Here there is no showing that the trial court considered itself bound to admit the criminal record. The defendant points to no express language which would indicate that this was the case, nor do we find anything in the record from which such a conclusion can fairly be implied.

The trial court approved the following statement:

That based upon a reconstruction of events from the best available means, including but not limited to the Court's expressed intention on the record to make a ruling and the fact that the trial of this matter commenced the same day that the Court heard oral argument so that the necessity to make a ruling was not overlooked due to a lapse of time, the Court believes that a ruling was made

following *Pond* v. *Carter* to deny defendant's motion in limine.

An alternative statement, which included the following language, was also submitted by the defendant but was objected to by the state's attorney and never approved by the trial court:

> The record does not contain the court's ruling on appellant's motion in limine. However, the court ruled prior to trial that the state would be able to impeach appellant with his prior convictions because the court lacked discretion under the statute to exclude such evidence.

The court's five year old impression that it "believes" it made a ruling "following *Pond* v. *Carter*," even if evidentially sufficient, would still not resolve the essential issue in this claim. Particularly when compared to the rejected statement it fails to tell us which of the competing interpretations of *Pond* v. *Carter* it was which was followed, or where it may have led.

*Pond* v. *Carter* may have been read by the trial court for the proposition that a trial judge has no discretionary power to exclude prior convictions otherwise eligible for admission under 12 V.S.A. § 1608, as the state's attorney urged. But it is also possible that the court read the case in the light cast on it by the defendant, as not precluding an exercise of discretion in the matter before it.

That this second interpretation, now well-illuminated by our decision in *State* v. *Gardner*, was before the trial court, is clear from the transcript of the hearing on the motion to exclude. There the state's attorney indicated to the court that even if *Pond* v. *Carter* were not read to require the admission of the criminal record as a matter of right, and the court chose instead to apply the balancing standard of the federal rules, it was still his position that the material would be admissible.

The defendant argues further that the failure of the trial court to exercise its discretion left him substantially disadvantaged and resulted in prejudicial error. He notes that under the criteria set forth by this Court in *State* v. *Gardner*,

*supra,* 139 Vt. at 460–61, 433 A.2d at 251–52, the admission of his criminal record for impeachment purposes would have constituted an abuse of discretion, had discretion been exercised.

Even treating this statement as an alternative argument that the Court exercised, but abused its discretion, and assuming, arguendo, that the *Gardner* criteria would apply to this case, we still think the defendant's proof falls short of its mark.

The defendant maintains that his claim of alibi required him to testify in his own defense, and that once the convictions were ruled admissible he was forced to reveal his criminal record to the jury himself. He suggests that the length of that record, and the similarity of the offenses contained in it to the offense being tried, gave rise to an especially severe possibility of prejudice in his case. He cites *Gordon* v. *United States,* 383 F.2d 936 (D.C. Cir. 1967), which we cited with approval in *State* v. *Gardner, supra,* in support of this argument.

The State, as expected, emphasizes the probative value of the defendant's prior convictions on the issue of his credibility, and seeks to minimize the prejudicial impact of their admission into evidence. It notes that all of the convictions involved dishonesty or falsehood, that none was crime of violence, in contrast to the crime of which the defendant stood accused, and that all of the judgments were rendered within a three and a half year period prior to trial.

The state's attorney points out that the criminal record was introduced by defense counsel, with no attempt on the State's part to recite the convictions at length. Finally, he questions the alleged necessity for the defendant to have testified in the first place, since three other witnesses were produced to support the alibi defense.

*Gordon* v. *United States,* which guided our decision in *State* v. *Gardner,* was grounded in the rationale of *Luck* v. *United States,* 348 F.2d 763 (D.C. Cir. 1965), which recognized that prior convictions have genuine probative value on the issue of credibility, but that because of their potential for prejudice, their receipt for impeachment is discretionary. *Gordon, supra,* 383 F.2d at 939. *Gordon* also adopted the *Luck* notion that it becomes the defendant's burden in such cases to offer

sufficient reasons to the court for withholding past convictions from the jury where a statute allows their admission. *Id.*

On the facts of this case we cannot say that a discretionary decision by the trial court to admit the defendant's criminal record amounted to a determination that he had not met his burden, on grounds so untenable or unreasonable as to amount to an abuse of discretion.

Defendant's second claim of error concerns a pair of cut-off green tights found eleven days after the robbery at a spot three-quarters of a mile from where it occurred. The tights were found in roughly the same area where an empty money-bag, positively identified as that taken in the robbery, had been found during a previous search eight days before.

At trial, one victim of the robbery testified that the robbers wore green stocking masks over their heads. A second victim, who made an in-court identification of the defendant, testified that the defendant's mask was "nylon-type material" and "dark in color." When handed the pair of tights discovered after the robbery the second victim further testified that "it appears to be very similar to the type mask, size, color and transparency worn by the robbers that night. Very much so." On this basis the tights were admitted into evidence over the objection of defense counsel.

The defendant argues that the admission of the tights was error because they had not been sufficiently connected to the robbery. He maintains that physical evidence can be particularly damaging when presented to a jury because it tends to imply by its mere presence that everything which has been said about it at trial is true. From this he argues that the tights should not have been admitted on the basis of inference alone.

The defendant also raises the possibility that the tights found were significantly altered from their original state by having been exposed to the elements, but that argument not having been made below will not be considered on appeal. *State* v. *Durling*, 140 Vt. 491, 496, 442 A.2d 455, 458 (1981).

The test for a foundation for admissibility is not absolute certainty. The requirement is only that the evidence

be of demonstrable relevance and of sufficiently meaningful substance to be justifiably relied upon as a fact by the jury, rather than standing as an insubstantial invitation to conjecture. *State* v. *Connarn,* 138 Vt. 270, 274, 413 A.2d 812, 815 (1980). The matter of the adequacy of the foundation is a matter for the trial court not ordinarily subject to review, *Knight* v. *Willey,* 120 Vt. 256, 262, 138 A.2d 596, 601 (1958), and where an abuse of discretion is alleged this Court will indulge every reasonable presumption in favor of the ruling below which is not positively inconsistent with the record, *State* v. *Kasper, supra,* 137 Vt. at 200, 404 A.2d at 94. Under this test no ground for reversal appears.

Nor do we find reason to disturb the ruling of the lower court allowing the in-court identification of the defendant by one of the victims despite an allegedly suggestive pretrial photographic identification which was raised in issue at trial by the defense attorney. We are far from convinced that the array of photographs presented to the victim prior to trial was unduly suggestive, but even if we were it would not be conclusive on this issue.

"[R]eliability is the linchpin in determining the admissibility of identification testimony." *State* v. *Kasper, supra,* 137 Vt. at 192, 404 A.2d at 90 (quoting *Manson* v. *Brathwaite,* 432 U.S. 98, 114 (1977)). Here, the State sought only to introduce the in-court identification. An in-court identification, even where it has been preceded by a suggestive pretrial identification, may still be admissible where its reliability can be independently established. Factors to be considered in assessing reliability are the opportunity of the witness to observe the criminal at the time of the crime, the witness' degree of attention, the accuracy of the description he is able to give police, the level of certainty accompanying the description, and the time lapse between the crime and when the description is first given. *Id.* at 192–93, 404 A.2d at 90.

The witness who identified the defendant had ample opportunity to observe him during the course of the robbery, at close hand and under good conditions. His description of the defendant, given to state police shortly after the robbery,

accurately described the defendant on six characteristics, with a high degree of certainty. The pretrial identification, which allegedly tainted the in-court identification, was made only two days after the crime, and furthermore the in-trial identification was subject to cross-examination. Measured against the indicia of reliability set out by this Court in *Kasper*, the trial court's ruling was well within the bounds of discretion.

This leaves for our consideration the defendant's final claim of error, which goes to the propriety of the State's closing argument. Three issues are raised.

First, the defendant claims that the prosecutor departed from the evidence to argue to the jury his own version of the facts in this case. The allegation is based on the state's attorney's statement that the defendant was under observation by one of the victims for twenty-five seconds, despite the fact that no witness used this twenty-five second figure expressly. We find that the record amply supports the prosecutor's comment as a fair interpretation of the evidence on the victim's opportunity for observation.

Next, the defendant suggests that the prosecutor urged the jurors to conduct their own experiment with the tights in the jury room to see if a person's features could be distinguished through them. Although there may have been some ambiguity in the language used by the prosecutor in addressing this issue, we decline to infer, without more, that his remarks were intended to have their most damaging meaning, or that the jury, in the course of listening to his summation, would have drawn that meaning from all of the possible interpretations. *State* v. *Kasper, supra,* 137 Vt. at 209, 404 A.2d at 99 (citing *Donnelly* v. *DeChristoforo,* 416 U.S. 637, 647 (1974)). Where, as here, the remarks were insufficient even to trigger an objection by defense counsel, we will not review them on appeal.

Finally, the defendant accuses the state's attorney of injecting his own personal belief as to the defendant's guilt into his summation. The comments were not objected to below, but in any case we find them well within the permissible limits of a fair trial. A prosecutor may argue what the evidence shows and all of the proper inferences there-

from. *State* v. *Gravelle*, 117 Vt. 238, 246, 89 A.2d 111, 116. (1952). To deny him this privilege would deny his right to place before the jury the logic of the testimony which supports a conclusion of guilt, and which he has a right to presume will lead them to the same conclusion. *State* v. *King*, 131 Vt. 200, 208, 303 A.2d 156, 161 (1973); *State* v. *Gravelle*, *supra*, 117 Vt. at 246, 89 A.2d at 116.

*Judgment affirmed.*